## SOLOMON *v.* RICHARDSON.

1. DAMAGES—BREACH OF CONTRACT—SALES—GENERAL RULE.
   The general rule of damages for failure to deliver goods sold is the difference between the contract price and the market price at the time and place of delivery.

2. SAME—MEASURE OF DAMAGES—MARKET VALUE.
   If there were no market price at the place of delivery, then the market price at the nearest place where there was one could be shown, and the difference between this price and the contract price, with the added cost of transportation, would be the measure of damages.

3. SAME—SPECIAL DAMAGES—EVIDENCE.
   Where there was no testimony justifying the trial court in applying any other or different rule of damages than the general one, it was reversible error to apply a rule allowing special damages.

On the question of measure of damages for breach of contract on sale of article that has no market price at place of delivery, see note in 57 L. R. A. 193.

Error to Oscoda; Widdis, J. Submitted June 11, 1919. (Docket No. 1.) Decided October 6, 1919.

Assumpsit by Selig Solomon against Frank H. Richardson for breach of a contract for the sale of lumber. Judgment for defendant. Plaintiff brings error. Reversed.

*Joseph H. Cobb* and *W. S. Cobb,* for appellant.

*Hiram R. Smith* (*Glen Smith,* of counsel), for appellee.

BIRD, C. J. The parties to this suit entered into a written contract on December 18, 1915, by which plaintiff agreed to deliver to defendant at Masts Mill, near Mio, Oscoda county, 100,000 feet of sawed lumber at $20 a thousand. The principal item was 1,020 pieces of piling and the balance was special "bill stuff." The delivery was to be made on or before February 15, 1916. About the middle of January plaintiff commenced to make deliveries of the lumber and continued to do so up to February 11, 1916, when a controversy arose between the parties over the inspection and rejection of certain timber which had been delivered. Considerable controversy ensued as to the extent to which the lumber should be rejected, and, not being able to agree, plaintiff advised the defendant that he would not complete his contract. He then brought this suit to recover the contract price for what he had delivered. Defendant pleaded the general issue and gave notice of recoupment. The matter was tried by the court without the aid of a jury. The court found that defendant was entitled to damages for nondelivery in the sum of $1,481.06. Deducting from this plaintiff's credit of $418.84 left a balance in favor of defendant of $1,062.22, for which amount judgment was rendered in defendant's behalf.

1. Defendant claimed, and was permitted to show, over plaintiff's objection, that he was obliged to go several miles from the place of delivery to purchase the balance of the timber, and that his total expenses in securing the same were $1,695.81. This sum included not only the purchase price but items of interest on money used to purchase the timber, interest on his profits which were withheld by the Eastern Michigan Power Company, car demurrage, traveling expenses in looking for the timber and the expense of six idle teams held in the woods several days waiting for the timber to be cut.

It is the contention of plaintiff that the general rule of damages for nondelivery of personal property should have been applied by the court and that the testimony did not justify the court in applying an enlarged rule of damages.

The real controversy is whether a state of facts was shown by the testimony which would justify the court in applying any other or different rule of damages than the general one for the nondelivery of personal property, namely: The difference between the contract price and the market price of the timber at the time and place of delivery.

It was said in *Cuddy* v. *Major*, 12 Mich. 368:

"To create such extraordinary liability there must, in every case, be something in the terms of the contract, read in the light of surrounding circumstances, which shows an intention on the part of the vendor to assume an enlarged engagement, a wider responsibility than is assumed by the vendor in ordinary contracts for the sale and delivery of merchandise."

This rule was followed in *Henry* v. *Hobbs*, 165 Mich. 183. It was there said:

"We do not think, however, that the facts as they appeared in this case would justify an enlargement of the rule. It appears that defendant knew that the apples were to be shipped to South Dakota, but it does

not appear that the plaintiff informed him of the fact. The defendant was not informed that the apples had been resold or that the plaintiff desired them for any particular market, or for any special purpose, or that he had contracted to sell them for any particular price. Unless information of this character was imparted by the plaintiff to the defendant at the time the contract was made, the rule of special damages could not be lawfully applied. 2 Mechem on Sales, §§ 1761, 1762; 30 Am. & Eng. Enc. Law (2d Ed.), p. 216."

The testimony discloses that plaintiff knew at or before the contract was made that the lumber was going to the Eastern Michigan Power Company. The first talk Richardson had with plaintiff about the lumber, an agent of the Eastern Michigan Power Company was with him. Later the contract was prepared by Mr. Richardson in his own name, and at that time he stated to the plaintiff that he had an order from the Eastern Michigan Power Company for the lumber, but it does not appear that he had a contract with that company for the lumber nor that it was sold for any particular price, nor that he had contracted to deliver it to the power company at any particular time, nor that it was to be used for any special purpose other than its dimensions would indicate. The court stated, in making his finding, as bearing upon this question, that it was difficult to secure such timber in the vicinity of Masts Mill, but we are unable to find that there is any testimony to support this conclusion. The defendant claimed upon the trial that it had a contract with the Eastern Michigan Power Company, but it was not produced, and the testimony in relation to it was subsequently stricken out. Looking at the negotiation of these parties at the time the contract was made, we are unable to see anything in the contract or in the circumstances attending the making of it, that would take the case out of the ordinary rule, especially in the absence of proof that there

was no market value at the place of delivery. There was no showing by defendant that there was no market price at the point or immediate vicinity where the delivery was to be made. This should appear before proof is made of special damages. If there were no market price at the place of delivery, then the market price at the nearest place where there was one could be shown. The difference between this price and the contract price, with the added cost of transportation, would be the measure of defendant's damages. 35 Cyc. p. 638.

The judgment is reversed and a new trial ordered, with costs of this court to plaintiff.

MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.