Sauer Hide Co. v. Stein, 174 Wis. 185.

---

SAUER HIDE COMPANY, Respondent, vs. STEIN, Appellant.

*April 7—May 3, 1921.*

*Sales: Formation of contract: Telegram referring to oral offer: Custom: Appeal: Service of appeal papers: Waiver of defective service.*

1. Sec. 2836a, Stats., providing that, when an appeal is attempted to be taken in an action in which an appeal is authorized and return is duly made, respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal or the jurisdiction of the appellate court unless he shall move to dismiss before taking or participating in any other proceedings, applies to attempted appeals to the supreme court.

2. Under secs. 2820, 2821, Stats., relative to the service of papers, sec. 2836a, relating to the waiver of objections, and sec. 3049, relating to service of notice of appeal, the respondent, by admitting service of copies of the printed case and brief and stipulating for a continuance of the hearing of an appeal, waived any right to question the jurisdiction of the court because notice of the appeal was served by mail instead of personally.

3. In an action for breach of a contract for the sale of hides, the jury's conclusion, sustained by the civil court of Milwaukee county, that the contract contained a guaranty by the seller that not more than fifty per cent. of the hides would be of second quality, is *held* to be warranted by the evidence and the admissions in the pleadings.

4. Plaintiff offered a lot of hides to a broker at twenty-five cents a pound, and by telephone said it would guarantee their running not over fifty per cent. of No. 2's, and in answer to an offer of twenty-four and one-half cents a pound plaintiff wired that it would accept such price with all No. 2's included. The broker's prospective customer did not agree to such conditions, and the broker offered the hides to defendant, informing him of plaintiff's guaranty. Defendant accepted the hides, and the broker wired plaintiff, "Accept hides as offered." *Held* that, as the broker was not defendant's agent nor acting as broker between plaintiff and defendant when plaintiff's telegram was sent, defendant was not precluded by the telegrams from showing the offer presented to him by the broker and accepted by him.

5. In the absence of any provision to the contrary in the contract, a custom in the particular line of business permitting the buyer to treat the contract as broken if the first shipment contained more second-quality hides than agreed, and leaving it wholly at his option whether to accept subsequent shipments making up the deficiency in first-quality hides, was controlling.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

The plaintiff is a wholesale dealer in hides in Pittsburgh, the defendant a dealer in Milwaukee, and Francis A. Groves a broker in hides in Chicago.

It is conceded that in the hide trade the better quality are referred to as number 1's, the lower as number 2's. A quoted price per pound for number 1's means a price one cent lower per pound for number 2's. Hides designated as long-haired are a poorer grade than the short-haired.

August 10, 1917, the plaintiff telegraphed to Groves an offer of 2,500 hides, no long-haired, at twenty-five cents per pound.

Upon receipt of the telegram, Groves, being desirous of knowing the proportion of number 2's that would be included, telephoned to the plaintiff's president and was informed that the lot would run from thirty-five to forty per cent. of number 2's and that plaintiff would not guarantee their running not over forty per cent., but would guarantee not over fifty per cent. 2's. After communicating with one or more prospective customers not including defendant, Groves then wired plaintiff that he had an offer of twenty-four and one-half cents per pound with a guarantee that not over forty per cent. number 2's should be included.

Plaintiff replied to the effect that it would take twenty-four and one-half cents per pound for 2,500 or 3,000 hides, no long-haired hides included, but that *all 2's must be included,* and requested Groves to wire acceptance. The then prospective customer of Groves did not agree to such conditions, but such refusal was not communicated to plaintiff. On the next day, Saturday, August 11th, defendant called on Groves and was informed by him concerning the lot of hides offered by plaintiff and of the telephoned statement that the lot would not contain over thirty-five to forty per cent. 2's and was also informed of the offer that had been made by Groves's other customer.

Defendant agreed to purchase the hides and Groves wired plaintiff, "Accept hides as offered." Groves mailed on Saturday, August 11th, in the usual form, the confirmation of sale, in which he mentioned the name of defendant as buyer, the price of twenty-four and one-half cents per pound, and that the lot was to contain "not over fifty per cent. 2's," and that the buyer, the defendant, would pay Groves's commission.

On Monday, August 13th, the plaintiff's president, having before him the telegram and the letter of confirmation of August 11th, wrote Groves calling attention to its claim that confirmation did not agree with its telegram in the

particular that the confirmation provided that the shipment was not to contain over fifty per cent. 2's, the telegram that all 2's must be included, asking for a corrected confirmation that would agree with the original offer; that plaintiff would begin to arrange the hides "I have sold to *Oscar Stein,* Milwaukee, Wis., through you" on the following Monday, the 20th, and would expect Groves's employee to be there on the 21st to begin the work of inspecting the shipment.   No corrected confirmation was sent.

After receiving this letter on August 14th, Groves replied to plaintiff referring to the telephone communication and the statement therein that the plaintiff would guarantee there were not over fifty per cent. 2's in the lot and that he, Groves, had sold the goods on that representation; that Groves had written the confirmation according to the way he thought the transaction was made, but if he was wrong regarding any minor points he would make the proper adjustment. On August 15th, in reply, the plaintiff wrote Groves to the effect that at the time of the telephone communication the limitation of not over fifty per cent. 2's was made provided the hides were sold at twenty-five cents; referred to the subsequent telegram by plaintiff that they would accept the price of twenty-four and one-half cents with all 2's included, and Groves's telegram, "Accept hides as offered."   The letter also stated that plaintiff was taking up this question to avoid a misunderstanding when the hides were delivered, and that unless plaintiff heard by wire they would commence preparing for shipment on the following Monday.   Groves replied on August 17th saying that he could not see how the hides could run more than fifty per cent. number 2's if they were hides from plaintiff's section of the country; that all Groves wanted is what is fair and right, and that he did not anticipate any trouble with regard to this trade; that they might start on the following Monday and his employee would be there on Tuesday morning.

The work of inspection began on August 21st and on the

following day the inspector wired Groves to the effect that the first car contained about sixty-six per cent. 2's. On the 23d, after receipt of such telegram, Groves wired the plaintiff, "Please hold hides for change in shipping instructions." Plaintiff replied: "One car hides already gone forward and draft made on *Stein,* second car almost finished." August 24th, after Groves had communicated with defendant, he telegraphed plaintiff saying that the defendant would not take over fifty per cent. 2's. Plaintiff immediately replied, "Expect you to receive hides as bought, we are willing to ship 2's over fifty per cent. elsewhere for your account, wire." Groves replied that he did not buy hides on his own account, and on the 25th telegraphed plaintiff to the effect that *Stein* had telephoned that the first car was so different from contract that he will not accept and insists upon canceling the deal.

The invoice of the first car shipped on August 23d, received by defendant about the 25th, showed on its face that the car contained about sixty-six per cent. 2's; a similar showing was on the face of the invoice for the second car shipped on the 25th. Defendant telegraphed plaintiff that the hides were not according to description, that the draft for the first car was returned, and that he would not accept the draft for the second car.

On the 27th defendant telegraphed plaintiff: "To avoid unnecessary expense do not ship hides." Plaintiff offered to hold all hides of number 2's in excess of the fifty per cent. and also offered to ship sufficient number 1's in the third and last car to make up the proper proportion. Plaintiff notified defendant that the third car would contain sufficient 1's to conform to contract and that it expected defendant to receive the hides and pay the drafts.

The third car was shipped August 30th and contained all number 1's, so that the total of the three cars did not contain in excess of fifty per cent. number 2's.

Defendant still refusing to accept any of the shipments

which had arrived in Milwaukee, the plaintiff's president went to that city and about September 7th offered the three carloads to defendant as and for a compliance with the contract, and defendant still refused to accept. Thereafter plaintiff sold the three carloads in Milwaukee, and for the difference between the contract price with defendant and the amount so recovered and the expenses in connection with the transaction it brought suit against defendant in the civil court.

The part of the complaint material here is as follows:

"2d. That on or about the 10th day of August, A. D. 1917, the plaintiff above named entered into an agreement with one Francis A. Groves, a broker, duly authorized by the defendant to make said agreement for and on behalf of said defendant, wherein and whereby the said plaintiff agreed to sell and the said defendant agreed to receive three carloads of hides, and the said defendant agreed to pay therefor the sum of thirty-one thousand seven hundred sixty-two and 81-100 ($31,762.81) dollars."

A bill of particulars was furnished by plaintiff's attorney upon demand, and it contained the recital that the contract was made August 11, 1917; it also mentioned as one of the elements of such contract, in a description of the merchandise sold, that there were to be *"not over fifty per cent. 2's."*

The original answer contained the following paragraph:

"Admits that on or about the 10th day of August, 1917, the plaintiff entered into an agreement with one Francis A. Groves, a broker, wherein and whereby the plaintiff agreed to sell, and the defendant agreed to purchase, three carloads of hides, *said agreement being in writing.*"

The answer also contained a counterclaim reciting in substance the contract according to the provisions of the written confirmation of sale sent by Groves to plaintiff on August 11th and specifying as one of the conditions thereof that the hides were to run not over fifty per cent. 2's, and that the hides shipped by plaintiff to defendant were not of

the kind, grade, quality, nor specification as set forth in such agreement, and that by such failure the defendant had been damaged.

The plaintiff served its reply to such counterclaim, wherein it admitted entering into a contract with defendant on or about August 10th whereby the defendant purchased from the plaintiff hides at the price and *quality substantially as set forth in defendant's counterclaim.*

The plaintiff on its behalf took and gave in evidence the deposition of the broker, Groves, who testified that he had been in the hide business about seventeen years and as a broker four or five years and was familiar with the purchase and sale of hides. He testified on his direct examination that the defendant told him to accept the hides on the witness's description that they would not contain over fifty per cent. number 2's, as so informed by telephone conversations with plaintiff's president.

On cross-examination by defendant's counsel the witness stated as to the custom of the trade that when hides are purchased on a basis of fifty per cent. number 2's and they are found on inspection to be of a different percentage, with the permission of the buyer the proportions in the last car may be changed to bring the whole proportion up to the contract terms; that the buyer had the privilege of refusing to accept the shipments containing a greater proportion of 2's than agreed. He also stated that he knew that the first shipments were not a compliance with the contract as outlined in his confirmation; that according to the custom of the trade, when an inspector of such hides proposed for shipment finds that they are running more number 2's than according to the terms of the contract, it is at the option of the buyer whether he rejects them or whether he takes them on a compromise basis.

The civil court submitted the question to the jury as to whether or not there was a contract entered into between

the parties and on the theory that the telegram sent by Groves, "Accept hides as offered," after he had conversed with defendant, might refer to the offer as understood by Groves upon the telephone conversation or might refer to the offer upon the previous telegram sent by plaintiff which contained the term that "all 2's must be included." The jury found in favor of the defendant, and the plaintiff appealed from the judgment entered in accordance with such verdict. On appeal to the circuit court the judgment of the civil court was reversed and judgment entered for the plaintiff, from which the defendant has appealed.

For the appellant there was a brief by *Robert A. Hess* and *Robinson & Saltzstein,* all of Milwaukee, and oral argument by *Mr. B. F. Saltzstein* and *Mr. Hess.*

For the respondent there was a brief by *Kaumheimer & Kenney* of Milwaukee, and oral argument by *R. I. Kenney.*

ESCHWEILER, J. Plaintiff moved to dismiss the defendant's appeal herein. The motion was argued, and without any opinion being then filed was denied. The grounds for such denial are now set forth.

The judgment in the circuit court was entered March 27, 1920. On March 29th a notice, affidavit, and undertaking on appeal was prepared on behalf of defendant from such judgment. The notice was directed to the clerk of the circuit court and to plaintiff's attorneys. Service thereof was admitted by that clerk April 14, 1920, and it was then marked "Filed." On April 13, 1920, defendant's attorney inclosed a copy of such notice of appeal and undertaking thereon in a letter to plaintiff's attorneys, the attorneys for the respective parties both residing in and having their respective offices in the city of Milwaukee. It is a conceded fact that such letter with the inclosure was received by plaintiff's attorneys not later than the following day. No

written admission of service was made by plaintiff's attorneys and the copies were not returned.

August.3, 1920, the respondent paid the necessary fees for the transmission of the record, and the record, having as a part thereof the said notice of appeal, affidavit, and undertaking, with admission of service by the clerk of the circuit court, was sent to this court, and filed on August 3, 1920.   November 24th the attorneys for plaintiff and respondent admitted in writing due service of four copies of the printed case and made a similar written admission of service of the appellant's printed brief on December 1st. Respondent's counsel subsequently forwarded to the clerk of this court a written stipulation made between the parties that this cause, which was regularly set on the then calendar for argument on December 16th, should be continued to the January, 1921, term of this court without costs to either party and that an order to that effect might be made without other or further notice.   The cause was so continued.

On March 21, 1921, a year and a day after the entry of the judgment in the circuit court and just a day after the statutory period for the taking of an appeal had expired, plaintiff's attorneys served notice on defendant's attorneys of a motion returnable April 5th in this court for a dismissal of the appeal on the ground that this court has no jurisdiction either of the subject matter of the appeal or of the person of the respondent upon the grounds hereinafter discussed.

Sec. 3049, Stats., providing for appeals to this court, requires service of written notice of the appeal upon the adverse party and the clerk of the court from which the appeal is taken.   Sec. 2820, defining and describing the manner of service, provides, among other things, for personal service by delivery of a copy of the paper to be served to the party or attorney on whom service is to be made.

Provision is made by sec. 2821 for service by mail where the person making the service and the one on whom it is to be made reside in different places.

Respondent urged that where, as here, the attorneys for both sides resided in Milwaukee, the mailing of the copy of the appeal papers to respondent's attorneys was entirely ineffectual and in no sense a delivery of them or the statutory personal service that is required, and that the personal service required under sec. 2820, *supra,* has been differentiated from service by mail. *Adams v. Wright,* 14 Wis. 408, 414. That for want of a showing of proper service of the appeal papers there is an entire absence of jurisdiction in this court of the subject matter of the appeal as well as of the person of the respondent and no authority to hear the appeal upon the merits or to do more than to dismiss such attempted appeal.

Former decisions of this court passing upon the then statutory provisions as to service and the necessity of proof thereof appearing in the record have been called to our attention and examined, among others *Koch v. Hustis,* 110 Wis. 62, 85 N. W. 643; *Munk v. Anderson,* 94 Wis. 27, 68 N. W. 407; *Herrick v. Racine W. & D. Co.* 43 Wis. 93; *Eaton v. Manitowoc Co.* 42 Wis. 317; *Yates v. Shepardson,* 37 Wis. 315; all of these indicating the strictness with which such rules were formerly applied. The same doctrine was reiterated in the later case of *Haessly v. Secor,* 135 Wis. 548, 116 N. W. 175. That the later judicial decisions, however, were beginning to lessen the rigor with which such statutory requirements had been construed, is suggested in *Liesner v. Wanie,* 156 Wis. 16, 19, 145 N. W. 374.

Subsequent to all of these decisions, however, and in line with the more recent suggestions of this court, the legislature, in the exercise of its wide control over the subjects of the matters which may and the manner in which they shall be appealed (*Dempsey v. Nat. S. Co.* 173 Wis. 296, 181 N. W.

218), by ch. 219, Laws 1915, passed an act for the declared purpose of simplifying and expediting legal procedure, amending certain specified sections of the statutes, and adding, among others, a new section which now appears as sec. 2836a, the material part whereof reads as follows:

"Whenever an appeal is attempted to be taken in a matter, action or proceeding in which an appeal is authorized by statute from any inferior court, tribunal, officer or administrative board to any court of the state, and return is duly made to such court, the respondent shall be deemed to have waived all objections to the regularity or sufficiency of the appeal or to the jurisdiction of the appellate court over person or subject matter, unless he shall make such objection by motion to dismiss such appeal before taking or participating in the taking of any other proceedings in said appellate court. . . ."

It is manifest that such section refers to appeals attempted to be taken to this court and is applicable to the present situation.

Prior to this motion to dismiss, the plaintiff, respondent here, admitted due service of copies of the printed case and brief respectively on this appeal and stipulated in writing that the appeal regularly set for hearing on the August, 1920, calendar of this court should be continued to the present term. Upon such stipulation the cause was so continued in this court. By such acts the respondent, before making its objection on the ground of alleged want of jurisdiction by its motion to dismiss, did participate in the taking of other proceedings in said cause in this court within the meaning of this statute. The respondent therefore has waived any right it might have had to question the jurisdiction of this court on this appeal.

Upon the merits we are convinced that the finding of the jury in favor of the defendant on the trial in the civil court upon which judgment was rendered there in defendant's favor should be sustained.

Prior to Saturday noon, August 11, 1917, Groves, the Chicago broker, had been in communication with plaintiff with reference to the sale of this particular lot of 2,500 to 3,000 hides, and, the prospective customer or customers with whom Groves was then negotiating not agreeing to the terms as proposed by plaintiff, the negotiations in that regard were concluded. Up to this time Groves was in no manner an agent for the defendant. Defendant on his coming to Groves was informed by the latter of the substance of the telephone communications between Groves and the president of the plaintiff at a time when a price of twenty-five cents was under consideration and of the statement therein made that this particular lot of hides was not expected to run over thirty-five or forty per cent. number 2's, but that no guaranty on that point had been offered by plaintiff other than it would not exceed fifty per cent. number 2's. Defendant was not shown the prior telegram from the plaintiff to Groves and relied upon by it in this case as forming the basis of the contract in which the terms were specified that all number 2's must be included at the price of twenty-four and one-half cents. That the broker, Groves, understood the proposition as presented to defendant to include a guaranty by plaintiff that not more than fifty per cent. number 2's was to be included in the transaction is established from the testimony and by the confirmation of the order forthwith executed and mailed by Groves in which such condition is expressly mentioned. Plaintiff was fully apprised of the situation from the start by its receipt of the confirmation and by its calling Groves's attention to the alleged discrepancy between the confirmation and plaintiff's prior telegram and on this particular point. Plaintiff requested an amendment to the confirmation sent by Groves, but none such was ever sent and plaintiff proceeded to ship the goods without any written modification or change in the confirmation of sale by Groves and retained by plaintiff.

It is true, as urged by respondent, that the defendant in the original answer admitted the making of a contract in writing between the parties, and so long as such admission stood it could well be held to bind defendant, as was held by both the civil and the circuit courts. Such admission, however, did not identify or fix the terms of the contract. The complaint in reciting the plaintiff's version of the contract omitted any reference to any proportion of number 2's that were to be included in the sale, as appears from the quotation given in the statement of facts.

Subsequent to the filing of the complaint the plaintiff made two formal admissions of record that can properly be held as binding on it, as was held the admission of the contract in writing on the defendant. These were (1) the statement in the bill of particulars expressly reciting that the contract upon which plaintiff sued did contain the condition that not more than fifty per cent. number 2's should be included; (2) the reply to the counterclaim admitting that the contract between the parties was as to "the price *and quality* substantially as set forth in the counterclaim," the counterclaim expressly reciting that the contract between the parties did contain just such a provision.

There was therefore ample support for the conclusion arrived at by the jury and sustained by the civil court, namely, that the contract was as claimed by defendant with this fifty per cent. guaranty, rather than as insisted upon by plaintiff during the time of the several shipments and on argument here, as giving it the contract right to include more than such percentage of number 2's.

We cannot accept the theory of respondent that the two telegrams, the one from plaintiff to Groves in which it was stated that at the price of twenty-four and one-half cents *all the 2's must be included,* and Groves's telegram, "Accept hides as offered," constituted the entire and binding contract between plaintiff and defendant and rendered inadmissible

evidence as to the oral communications between Groves and the plaintiff's president and between Groves and defendant. At the time the telegram from plaintiff to Groves was received Groves was not the agent of defendant, nor acting as broker between plaintiff and defendant, and such telegram relating to then pending negotiations between other persons could not be held to be binding upon defendant. The situation is manifestly different from that presented in the cases cited to our attention in which the broker was acting during an entire transaction and period for but the two parties interested. The telegram, "Accept hides as offered," does not on its face so identify the offer thus proposed to be accepted as to tie it down to the former telegram of plaintiff to Groves, and it presented a situation where the defendant was entitled to show that the offer therein specified as being accepted was the one presented to him by Groves.

Mr. Sauer, plaintiff's president, testified on the trial that after he had been informed that the defendant would not accept or pay for the first carload of hides because it contained about sixty-six per cent. 2's rather than fifty per cent. and that Groves had instructed his inspector to stop work and return to Chicago, he nevertheless insisted on forwarding the second and third cars and induced the inspector to remain to finish the sorting. After the shipment of the first carload, therefore, the second and third were sent by plaintiff knowing that the defendant had elected to declare the contract breached and no longer binding because under defendant's understanding as to the contract it was not being carried out in a substantial respect by plaintiff. Mr. Sauer persisted in his view that he had the right to ship all the 2's in the lot even if they ran beyond the fifty per cent., in spite of protests by Groves and plaintiff and in spite of the fact that Groves had failed to send any modification in that regard of his written confirmation of the sale to defendant. Not until after Mr. Sauer had knowledge of the refusal of defendant to accept the goods did he change his proposition

with reference to the contract or offer to make up in the third car the deficiencies in the number 1's sent in the first and second cars.

It is urged by respondent that, the purchase being for an entire lot, plaintiff had the right to send a greater proportion than fifty per cent. of number 2's in the first and second car provided that on the completion of the shipment by the three carloads there was ultimately tendered defendant the contract proportion. It is unnecessary here to determine that question as a statement of general law governing such classes of contracts for the reason that the testimony stands undisputed in this case, as given by plaintiff's witness Groves, that in this particular line of business the custom of the trade permits a buyer under such a contract, finding that the first shipment is not in accordance with a provision as to the proportions of the grades of hides, to consider such failure a breach of the contract, and it is then entirely at his option to consent to receive any subsequent shipments with sufficient of the higher quality to make up the deficiency in the prior shipments. It is undisputed that defendant promptly, upon receipt of the invoice showing this discrepancy, elected to cancel the contract. It being undisputed that there was such a custom in this particular business, it of course controlled and governed the rights of the parties in this action, there being no provision in the contract to the contrary.

The defendant, therefore, in view of this testimony, was by virtue of such custom justified in his refusal to accept the first and subsequent shipments of the hides.

It follows that the circuit court erred in reversing the judgment of the civil court and directing judgment for plaintiff, and that the judgment of the civil court should be affirmed.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the judgment of the civil court.