Ward, Appellant, vs. Board of Trustees of Racine College, Respondent.

*November 17, 1921—February 7, 1922.*

*Bill of exceptions: Extension of time for settlement: Adequate excuse: Discretion of court: Affidavits of persons having personal knowledge of facts: Fraudulent representations inducing contract: Failure of consideration.*

1. Although the court has power to settle a bill of exceptions after the year within which an appeal may be taken has expired, the power should be exercised with caution and only in cases where the parties have brought themselves clearly within the

rule, and should not be so exercised as to extend the time within which the rights of parties may become fixed in cases where the default is due to unexcused delay.

2. Upon application to enlarge the time for settling a bill of exceptions, the application should be supported by the affidavit of persons having personal knowledge of the facts.

3. Mere unexcused lapse of time should not avail a party seeking to extend the time, and trial courts should not deem the application in any way personal because a denial may prevent a review of one of its judgments. Parties should be held to a strict rule, otherwise the constitutional right to obtain justice without delay (sec. 9, art. I, Const.) may be defeated.

4. The discretion vested in trial courts to excuse defaults should be exercised only where good and adequate cause is shown by the affidavits of persons having personal knowledge of the facts.

5. In an action against a denominational college for services in prosecuting a "quick fund-raising campaign" to provide the college with an endowment fund, the evidence is *held* to show that plaintiff induced the making of the contract by falsely representing that he had a "system" which was his personal property and was unique, and that there was a complete failure of consideration.

APPEAL from a judgment of the circuit court for Racine county: W. B. QUINLAN, Judge. *Affirmed.*

Contract. The complaint alleges that the plaintiff was engaged in the business of promoting and carrying on fund-raising campaigns for hospitals, churches, colleges, etc., and on July 5, 1918, had entered into a contract with the defendant to furnish its system and two representatives to conduct a campaign for the defendant to start not later than July 8th, plaintiff's compensation to be $250 per week, payable weekly. The contract, which was annexed to the complaint, after describing the parties and reciting that defendant wished to raise not less than $300,000 and desired to procure the services of the company, *R. H. Ward*, as doing business under the style of the Ward System Company, to institute and carry on a quick fund-raising campaign, contained the following:

"That the said company shall furnish to the said parties

of the second part the use, for and within the *service terri-tory of Racine College,* the said company's quick fund-rais-ing system, and the services of two of the representatives of said company; the said quick fund-raising campaign to start not later than July 8th and to continue for a period not less than twelve (12) weeks."

Another paragraph provided:

"That the said company shall, to the best of its ability, conduct said quick.fund-raising campaign, and while oper-ating same along its own well-specified lines will at all times be open to receive suggestions from said parties of the second part, and will act favorably upon such suggestions as in the judgment of the representatives of the company and the parties of the second part shall deem to be wise and for the best interests of the campaign."

There were other provisions as to furnishing of rooms, banners, and other paraphernalia ordinarily used in cam-paigns of this character, and other provisions not material upon this appeal.

The complaint further alleged that the contract was ex-tended; that the plaintiff furnished the use of its working system and two representatives for sixteen weeks for the agreed compensation of $5,600, of which $1,750 was paid.

The defendant admitted the making of the contract, the payment of the $1,750, and put in issue the remaining alle-gations of the complaint, and then alleged by way of de-fense and counterclaim that the plaintiff falsely represented to the defendant, prior to the execution of the contract, that he was possessed of a wonderful system for the raising of funds for educational and charitable institutions; that the system he used had been devised by him and was his own property; that the system had never failed and could not by any possibility fail; that the defendant signed the con-tract in reliance upon such representations.   Further alleged that such representations were untrue; that the defendant failed to launch or prosecute a campaign, and demanded judgment for $1,750 and an additional sum for expenses, amounting in all to the sum of $2,354.23.

Upon the trial the court made and filed findings of fact, and, because the facts cannot be more clearly or succinctly stated, we set out the findings material on this appeal *in extenso:*

"Fourth. That at and prior to the date of said contract [July 5, 1918] the defendant was in straitened financial circumstances, wholly without endowment, except that certain bequests had been made to it in trust for purposes having reference to its connection with and relation to the Episcopal Church, and was having great difficulty to meet its annual budget of necessary expenses, and those having the responsibility of its management were desirous of raising a large, fund, not less than $300,000, as set forth in said 'Exhibit A,' for the purpose of putting it upon a better financial footing, and providing it with a permanent endowment fund; and this condition of its affairs as well as its character and connection as an Episcopalian College were well known to the plaintiff at and prior to the time of signing said contract, 'Exhibit A.'

"Fifth. That in order to induce defendant to enter into contract with him, the plaintiff represented to defendant that he was possessed of a system or method for raising money by voluntary gifts or contributions which was private and peculiar to himself, the same being designated by him the 'Ward Systems Company's Quick Fund-Raising System,' which was most effective and uniformly successful and was operated along his own peculiar and well defined lines, by the use of which defendant would surely achieve its desire;— and proposed to defendant to furnish for a consideration the use of said 'System' and the services of two experienced expert representatives to conduct a quick fund-raising campaign on behalf of Racine College, stating at the same time, in substance, that the details of said system were peculiarly his own and could not be disclosed until after the contract was signed.

"Sixth. That defendant entered into the contract 'Exhibit A' mentioned in and attached to the complaint, in reliance upon the truth of said representations.

"Seventh. That said representations were untrue in this, that plaintiff was possessed of no system as represented, which was devised by, or was in any way private, individual, or peculiar to himself, or which was new or unknown, or in

which he had any proprietary rights or right or power of disposal, and said plaintiff never at any time disclosed to the defendant or furnished for its use any system, device or method for raising funds, except that method, long a matter of common knowledge and practice, viz.: that of securing a volunteer committee of citizens to direct the work and appointing teams of solicitors to do individual canvassing.

"Eighth. That plaintiff sent two representatives to Racine, ostensibly to perform said contract and conduct the quick fund-raising campaign therein provided for, but although the defendant furnished the plaintiff with all the facilities necessary or called for, provided a headquarters and plenty of stenographers and typewriters, with adequate postage, supplies, banners, posters, and other advertising matter as required or ordered by plaintiff, said plaintiff did not at any time launch or prosecute any 'quick fund-raising campaign,' as stipulated in said contract, or any money-raising campaign whatever, but his said representatives spent four or five weeks' time examining the archives of the college and making a partial list of alumni, of which no use was made by him or them, and at the end of twelve weeks they had barely completed the selection of an executive committee of citizens, which committee, after several conferences with plaintiff's representatives, and with plaintiff's sanction and approval, notified the defendant that before they could formulate plans it would be necessary for defendant to secure an amendment of its charter so as to remove the denominational qualifications for membership upon its board of trustees, and, thereby change its character as an Episcopalian school or college."

"Eleventh. That plaintiff wholly failed to perform and carry out the stipulations of said contract on his part, as therein expressed.

"Twelfth. That defendant, before becoming aware of plaintiff's misrepresentations and in reliance upon said representations and in good faith believing and expecting that plaintiff would perform said contract, paid to said plaintiff on account the sum of $1,750, and also paid out and expended for salaries of stenographers and for postage, stationery, and other supplies, and for posters, banners, and other necessary expense incurred at plaintiff's special instance and request in preparation for the said quick fund-

raising campaign, the further sum of $604.23, making in all the sum of $2,354.23 so paid out and expended by plaintiff, all of which was a total loss to the defendant and for which it received no consideration."

Judgment was entered for the defendant, from which the plaintiff appeals.

Subsequent to the entry of judgment and on August 18, 1920, other proceedings were had which are brought here by an appeal by the defendant and are considered herewith.

August 31, 1920, notice of entry of judgment was served.

October 28, 1920, exceptions were served and filed.

March 19, 1921, the defendant, in an effort to collect its judgment, commenced a garnishment action.

May 13, 1921, an order was procured for substitution of attorneys.

On May 16, 1921, an application was made to the attorneys for the defendant to extend the time for settling the bill of exceptions. This request was denied.

July 20, 1921, an *ex parte* order was entered enlarging time for filing the exceptions to a period of thirty days from the date of the order.

July 23, 1921, the appeal was taken from the judgment and the record transmitted to the supreme court, no bill of exceptions being included.

July 23, 1921, the plaintiff attempted to serve a proposed bill of exceptions.

On August 12, 1921, the court vacated the *ex parte* order of July 20, 1921, and on August 17, 1921, an order was entered on motion enlarging the time for thirty days for filing exceptions and serving a bill of exceptions and making previous filing of exceptions and attempted service of bill of exceptions effective from the date of notice of entry of the order.

August 19, 1921, notice of entry of order was served, and on the 29th day of August, 1921, the defendant appealed from the order.

For the appellant there was a brief by *Geo. W. Kretzinger* of Chicago and *Walter D. Corrigan* and *M. K. Whyte,* both of Milwaukee, and oral argument by *Mr. Corrigan* and *Mr. Kretzinger.*

For the respondent there was a brief by *Simmons & Walker* of Racine, and oral argument by *John B. Simmons.*

The following opinion was filed December 13, 1921:

ROSENBERRY, J.  We shall first consider the question raised by the appeal of the defendant from the order entered August 17, 1921.  The defendant claims that the court erred in two respects: First, in enlarging the time against objection so as to permit the filing of exceptions and the service of a bill of exceptions after the expiration of the time allowed for appeal; and second, in granting an enlargement of the time, no good cause therefor being shown.

Upon the oral argument the defendant, for sufficient reasons, waived any claim under the first assignment of error, and we shall not further consider it.

In *Behnke v. Kroening,* 174 Wis. 224, 182 N. W. 837, it was held that the court had power to settle a bill of exceptions although the year within which an appeal might be taken had expired.  It is a power which should be exercised with caution and only in cases where the parties have brought themselves clearly within the rule, and should not be so exercised as to extend the time within which the rights of parties may become fixed in cases where the default is due to unexcused delay.

In this case there is no affidavit from any one connected with the case prior to the substitution of attorneys on May 13, 1921.  The plaintiff was advised of the adverse decision and an appeal recommended on August 10, 1920.  On September 22d plaintiff's agent, Joannis, wrote to Mr. Hardy that the plaintiff was "seriously considering" an appeal.  Mr. Hardy, being a Wisconsin lawyer, must have known that a bill of exceptions should be settled within sixty

days or the time therefor extended. Just when this fact was drawn to the attention of the plaintiff's Chicago attorney does not appear, but on December 24, 1920, Mr. Kretzinger wrote Mr. Hardy "to complete the record, including transcript of evidence." No effort was made to settle the bill, nothing was done until the defendant sought to enforce its judgment by garnishment, and even then the proceedings in the case do not indicate that it was pushed forward with very great expedition.

In *Schluckebier v. Babcock,* 104 Wis. 293, 80 N. W. 435, where there was an unexcused delay of six months, a motion to enlarge the time to serve the bill of exceptions was held properly denied.

In *Colle v. K., G. B. & W. R. Co.* 149 Wis. 96, 135 N. W. 536, want of satisfactory explanation of a delay of five months was held sufficient ground for denial of motion to enlarge time.

In *Breen v. Kennedy,* 158 Wis. 48, 147 N. W. 996, motion made fifteen months after notice of entry of judgment, time for appeal then being two years, was held to justify the court in denying motion to settle the bill, although a transcript of the evidence had been paid for.

We again call attention to the rule that upon applications of this character the application should be supported by the affidavit of persons having personal knowledge of the facts. *Superior C. L. Co. v. Dunphy,* 93 Wis. 188, 67 N. W. 428.

The whole case being here upon the merits, the court has concluded not to determine the question raised on the appeal from the order, but we take this occasion to observe that there is every reason for holding parties to a reasonably strict compliance with the rule. In recent years much has been said and written in regard to the delays incident to litigation, and it is only by the firm application of procedural rules by the trial courts that such delays can be prevented. Mere unexcused lapses should not avail a party, neither should trial courts take the view that the application for an

order to extend the time within which a bill may be settled is in any way personal to them because it may result in the denial of a right of appeal from a judgment of the trial court. The question presented is much larger than that. It relates to the whole scope of the administration of the law, and if parties are not held to a reasonably strict rule one of the fundamental purposes of our system of jurisprudence, which, as declared by sec. 9, art. I, of the constitution, is that "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws," will be defeated.

There is no presumption that injustice is done a litigant by the judgment of the trial court. By statute he is given a right to a review, and the procedure by means of which such review may be had is prescribed and it should be adhered to in order that the constitutional declaration may be made effective. While discretion is vested in trial courts for the relief of parties who, by reason of some excusable fault or neglect, have been deprived of the right given them, it should be exercised only where good and adequate cause is shown by the affidavits of persons having personal knowledge of the facts, and where there is a delay for which no substantial, adequate reason is shown the party in default should not be relieved.

Upon the plaintiff's appeal it is strongly argued that the evidence does not sustain the findings of the trial court that the representations made by the plaintiff to the defendant were untrue and that the making of the contract was induced thereby. We shall not attempt to discuss or set out the entire evidence. Having in mind the rule that fraud must be established by clear and satisfactory evidence, we have carefully examined the record and are of opinion that the evidence amply sustains the trial court's findings. The main controversy relates to the so-called "system" of the

.plaintiff, which was represented by the plaintiff to be his personal property, that it was a system of raising money by voluntary gifts or contributions which was private and peculiar to himself and was of such a character that it could not be disclosed until after the contract was signed. The evidence discloses no system in which the plaintiff had any property rights whatever. It was identically the method followed in most of the liberty loan and other money-raising campaigns during the war. The plaintiff offered evidence to show that it consisted of four things:

First, the auditing of all the assets of the institution for which the campaign was to be made. This appears to be nothing more than making a list of the names of the alumni and others who were most likely to contribute.

Second, the classifying and grouping of all the various factors which the plaintiff might discover and the education of the people involved by a process of publicity, specialized and general. There was nothing more nor less than the ordinary publicity campaign with a grouping of the various "assets" which were disclosed by the so-called audit.

Third, the creation of public sentiment throughout the entire territory involved by speaking before special groups, and special literature sent out to the individuals. The creation of a public sentiment and furnishing printed matter in regard to the object and purposes of the campaign is an inseparable incident to every campaign.

Fourth, the development of teams under the committees already grouped in the first part of the process by means of which the money will be finally gathered together for the institution. This means no more nor less, as applied, than the procuring of volunteers to circulate subscription lists. No new or novel plan was disclosed, and the plaintiff had no property right in any of the methods adopted, which were those in common use.

By the plaintiff's testimony upon the trial it appeared:

"The peculiar feature of our campaign work is that we give it time exposure sufficient to allow the reaping of the

greatest amount of money from the territory. We operate by a system of twenty-one forms which we put in operation in five groups, each group playing its part at certain starts of the campaign. In that way allowing sufficient time to develop the territory. We differ from any other organization in the world."

It does not appear what the "time exposure" was. It remains a secret so far as this record discloses. Nor was the nature and character of the "twenty-one forms" explained to the defendant or at the trial.

It was represented to the defendant, claimed upon the trial below, and argued here, that the plaintiff has a system. We have carefully examined the evidence and agree with the trial court that there was none. The whole scheme seemed to be an effort on the part of the plaintiff to interpose himself between the defendant and its patrons for the purpose of enriching himself from such contributions as the defendant might receive. The representations, as the trial court found, were untrue. That Dr. Rogers, in executing the contract for the defendant, relied upon the representations, is too clear to admit of argument. A majority of the court are also of the opinion that there was a complete failure of consideration. The plaintiff had nothing to deliver and delivered nothing, and created a situation by reason of which it became necessary to entirely abandon the campaign without the raising of a single dollar.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 7, 1922.