SCARAMELLI & COMPANY, INC., Appellant, vs. COURTEEN SEED COMPANY, Respondent.

*December 6, 1927—January 10, 1928.*

*Sales: Of seed in foreign country: Custom: To make through shipment: To send samples: Damages: As of what place determined: Evidence by expert as to market value: Price memoranda: Harmless error: Appeal: From order extending settlement of bill of exceptions: Notice of review.*

1. An order extending the time for settling a bill of exceptions, made long after the judgment was rendered and constituting no part of the judgment, can be reviewed by appeal from that order only, and not by a cross-motion by respondent, under sec. 274.12, Stats., providing for a review of the rulings of the trial court. p. 525.

2. Proof of a general custom among those engaged in the exportation and importation of seeds, requiring the consignor to ship by a vessel sailing directly from the exportation port to the importation port, is admissible in an action by a seller for damages on the buyer's rejection of seeds shipped from Italy to New York because they arrived too late for the spring season, having been shipped by a tramp steamer instead of one sailing directly from Italy to New York. p. 526.

3. Findings of the trial court that it was the custom of dealers in seeds to send bulk samples with shipping documents, and that the defendant was justified in refusing to accept the seed when it arrived in this country, are *held* to be supported by the evidence. pp. 526, 527.

4. Under sec. 121.67, Stats., providing that the measure of damages upon the seller's breach, where there is an available

.

.

market, is, in the absence of special circumstances, the difference between the contract price and the market price of goods at the time when they should have been delivered, the place at which the market price is to be determined is generally held to be the place of delivery.  p. 527.

5. Notwithstanding the title to clover seed purchased under a c. i. f. contract passed to the buyer on delivery to the ocean carrier in Italy under sub. (4) (b), sec. 121.19, Stats., the buyer's damage for the seller's breach is determinable by the market price at the place of destination in the United States under sec. 121.67, since the parties must have contemplated that, in case of the seller's failure to perform, the buyer would be compelled to resort to the markets of this country to supply its goods.  p. 528.

6. The buyer having interposed a counterclaim for loss of profits resulting from the seller's breach, is *held* properly permitted to testify as to the market price of the seed at the date of the seller's breach from his own knowledge as an expert familiar with market conditions throughout the United States.  p. 529.

7. Evidence of memoranda, made in the buyer's office, relating to prices of clover seed at a certain market when the shipment should have arrived, if improperly admitted, is *held* not prejudicial to the seller, where the expert testified as to the market price from his own knowledge and the memoranda was but one element or factor in determining the market price.  p. 529.

APPEAL from a judgment of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge.  *Affirmed.*

Contract.  Notari & Company is a partnership dealing in clover seeds at Bologna, Italy; *Scaramelli & Company, Inc.,* is a New York corporation with its principal office in New York city, acting as a commission agent and factor in the clover-seed trade; *Courteen Seed Company* is a Wisconsin corporation, a large dealer in seeds, having its principal place of business in Milwaukee.

Two transactions are involved, one designated the 1918 transaction, the other the 1922 transaction.  In the 1922 transaction *Scaramelli & Company, Inc.,* acted as factor for Notari & Company in connection with the sale of clover seed by Notari & Company to *Courteen Seed Company,* the contract being made in the name of *Scaramelli & Company, Inc.*  Early in 1922 *Scaramelli & Company, Inc.,* acting as

factor for Notari & Company, offered to *Courteen Seed Company* certain Italian red clover seed, type 731, which resulted in a contract by which *Scaramelli & Company, Inc.,* sold to *Courteen Seed Company* for the account of Notari & Company, "300 (100 kilo) bags of Italian Red Clover, type 731 @ 36 per bag, c. i. f. New York. Payment: Sight draft documents attached. Shipment: February, 1922. Packing: Free. Insurance: Covered by seller. Remarks: Goods to be loaded as quickly as possible as agreed. Loading is subject to delay in case of strikes or other disturbances preventing the prompt dispatch and execution of · order. Goods are shipped for the account and risk of the buyer, and to be insured as per agreement herein.".

The contract contains certain other clauses which are not material here.

The seed did not arrive at the port of New York until April 6th, too late for the spring season, and the buyer refused to accept the same. The seller resold the seed, and, including storage, cartage, and loss of $6 per bag, sustained a loss of $2,085 and interest and brought this action to recover the same. The defendant set up that to the knowledge of the plaintiff the goods were sold to meet a seasonal demand; that by reason of the delay in shipment they arrived too late and for that reason the defendant refused to accept them; second, that there was a well known general custom in the trade that a shipment such as was involved in this transaction is required to go forward by the first regular vessel where there were such regular vessels plying between the places where the goods were to be loaded and where they were to be delivered; that such regular vessels plied between Genoa, the port nearest to Bologna, and New York city, and that if shipped in accordance with the usual and general custom the goods would have arrived in New York not later than March 20, 1922. The defendant further alleges that the seller caused the goods to be loaded upon

a steamer known and designated as a tramp steamer; that the seller knew or should have known that the goods so shipped would not arrive at the port of New York within forty-four days. The progress of the vessel upon which the goods were shipped is set out in detail, from which it appears that the vessel left Genoa February 20, 1922, stopping at six other ports and arriving in New York on April 8, 1922.

The defendant further alleges that there was a general and uniform usage and custom in the seed trade by which the seller was to forward bulk samples with the shipping documents, but the seller failed to forward such bulk samples, and generally denied all the allegations of the complaint except as expressly admitted. The defendant also had a counterclaim for damages by reason of which it was alleged that it was deprived of the profit of two and one-third cents per pound, amounting to $1,540. The defendant further set up by way of setoff the 1918 transaction, from which it appears that the defendant bought and paid for "500 bags of Italian red clover seed, type number 605, $34 per hundred kilos, f. o. b. Genoa, Italy, payable in cash against shipping documents at National City Bank, Genoa." Such goods were denied entry into the United States and to Canada and were finally resold at a loss, including storage, insurance, and freight, amounting to $15,000. There was a reply to defendant's counterclaim, the case was tried by the court and resulted in sustaining defendant's contentions as to the 1922 shipment, not determining the issues as to the shipment of 1918. The plaintiff appeals from the judgment for $1,540, interest and costs, amounting in all to $2,031.80.

*Aaron B. Rosenthal* of Milwaukee, for the appellant.

For the respondent there was a brief by *Fawsett & Shea,* attorneys, and *C. F. Mikkelson,* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson.*

ROSENBERRY, J.    The principal contentions made by the plaintiff here are (1st) that the terms of the 1922 contract have not been varied by proof of a general custom as contended for by the defendant; (2d) that the custom was not proven upon the required positive, clear, and satisfactory testimony; (3d) that the evidence is not sufficient to support the judgment in favor of the defendant against the plaintiff; and (4th) that the defendant established no right to a setoff with respect to the transaction in 1918.

Before proceeding to consider the issues in the case it is necessary to dispose of a preliminary question.    Judgment in this case was entered July 29, 1926, and notice of entry thereof was served July 31, 1926.    On June 9, 1927, an order to show cause was obtained why an extension of time should not be made for preparing and settling a bill of exceptions, and on June 18, 1927, an order enlarging and extending the time to the 29th day of July, 1927, was made. It appears from the affidavits that the defendant consented to an extension of the time until the 1st of December, 1926. On January 18, 1927, demand was made for payment of the judgment, and thereafter there were repeated demands. The excuse offered by the plaintiff is that Mr. Scaramelli did not return to the United States until the fall of 1926; that he was unable to decide whether or not to take an appeal because:

"First, the plaintiff acted as agent in this matter for the firm of Notari & Company in Italy, and before deciding whether or not the case would be appealed the plaintiff had to familiarize himself with the details as far as possible and communicate with the principal, Notari & Company of Bologna, Italy.

"Secondly, that the affiant was not personally acquainted with his Milwaukee attorneys.

"That after a long lapse of time he finally received a communication from the principal in Italy to the effect that the principal would not pay, therefore making it necessary for affiant to carry on this appeal at his own expense."

The time for settling bill of exceptions was extended upon condition that the plaintiff give bond as provided by statute for stay of execution upon the judgment.

This matter is discussed in *Ward v. Racine College,* 176 Wis. 168, 185 N. W. 635, where it is said:

"While discretion is vested in trial courts for the relief of parties who, by reason of some excusable fault or neglect, have been deprived of the right given them, it should be exercised only where good and adequate cause is shown by the affidavits of persons having personal knowledge of the facts, and where there is a delay for which no substantial, adequate reason is shown, the party in default should not be relieved." See *Behnke v. Kroening,* 174 Wis. 224, 182 N. W. 837; *Colle v. Kewaunee, G. B. & W. R. Co.* 149 Wis. 96, 135 N. W. 536.

If the question raised were properly presented by the record, we should have considerable difficulty in sustaining the order for the reasons pointed out in *Ward v. Racine College, supra.* The order was entered here nearly eleven months after notice of entry of judgment. Excuses of the character put forth in this case can be produced in any case and amount to little more than practical inconvenience. Consultation might have been had by attorneys. The question of appeal did not need to be determined. The only question was whether or not the bill of exceptions should be settled. The difficulty, however, is that the question is brought here on a motion to review pursuant to sec. 274.12, Stats. The material part of the section relevant here provides:

"In any case the respondent may have a review of the rulings of which he complains by serving upon the appellant any time before the case is set down for hearing in the supreme court a notice stating in what respect he asks for a review, reversal or modification of any part of the judgment or order appealed from."

The order sought to be reviewed here is one made long after the judgment and can only be reviewed by appeal from that order and not by a cross-motion under the statute, as it

is no part of the judgment appealed from. There is also a motion to strike the bill, but if the order extending the time to settle the bill is good, the bill of exceptions is properly here.

With respect to the first contention the plaintiff argues that a contract may not be varied by proof of universal custom where its terms are fixed and unambiguous. *Francis H. Leggett & Co. v. West Salem C. Co.* 155 Wis. 462, 144 N. W. 969; *State ex rel. Donahue-Stratton Co. v. Grimm,* 186 Wis. 154, 202 N. W. 162. Upon this branch of the case the court found that it was "the general custom among those engaged in the exportation and importation of seeds that the consignor shall ship by vessel sailing direct from the port of exportation to the port of importation," in which event the seeds would have arrived not later than March 24th. This conclusion finds support in the evidence. To ship goods of a highly seasonal character upon a tramp steamer taking forty-four days for passage, when they might be shipped by direct steamer to arrive in from twelve to eighteen days, is a material circumstance. The custom certainly appears to be a reasonable one and does not vary the terms of the written contract, but merely supplements it by incorporating in it matters of general custom well understood by both parties and with reference to which it must be presumed the contract was made. *Sauer Hide Co. v. Stein,* 174 Wis. 185, 182 N. W. 847; *Kosloski v. Kelly,* 122 Wis. 665, 100 N. W. 1037; *Iasigi v. Rosenstein,* 141 N. Y. 414, 36 N. E. 509. The existence of the custom was supported by direct and positive testimony of two witnesses and is not denied, although the plaintiff testifies that he knew of no such custom.

With respect to the custom of dealers in seeds to send bulk samples along with shipping documents, the finding of the trial court in favor of the defendant's contention seems to be well supported. In the 1918 shipment Notari & Com-

pany furnished such bulk samples, the same not being required by the express terms of the contract but quite apparently in conformity with the custom.   The object of the bulk samples is to enable the buyer to compare the shipment with the sale samples, if any, to exhibit the same to proposed customers, and to enable him to make such tests as may be desirable.   Failure to conform to the custom is certainly materially to the disadvantage of the consignee. The finding of the trial court that the defendant was justified in refusing to accept the goods at the time of their arrival at the port of New York is abundantly supported both upon the facts and upon the law.

Plaintiff's argument in support of its contention that the evidence offered did not sustain the judgment upon the defendant's counterclaim is based mainly on the proposition that the measure of damages was the difference between the market price of clover seed at Genoa or Bologna and the contract price, whereas the court's finding that the seed would have been worth two and one-third cents per pound above the contract price is based upon the American market.

Plaintiff refers to sec. 121.67, Stats. 1925 (Uniform Sales Act), which is as follows:

"Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered."

Under this section it is generally held that the place at which the market price is to be determined is the place of delivery. *Allen v. Wolf River L. Co.* 169 Wis. 253, 172 N. W. 158; U. L. A. (Sales) 251 and cases cited.

The argument here is that by the terms of the contract the place of delivery was Bologna or Genoa, Italy, and that there is no proof of the market price in either place.

It is argued that under sub. (4) (b), sec. 121.19, Stats., the title passed to the consignee at the point of delivery to the carrier at Genoa, and it is so generally held. *Smith Co. v. Marano,* 267 Pa. St. 107, 110 Atl. 94, 10 A. L. R. 697, and note. But it is also held that under a c. i. f. contract the place where title passes is not controlling with reference to what market the buyer's damages shall be determined. In this case it is perfectly apparent and must have been in contemplation of the parties that in the event of the failure of the seller to perform, the buyer would be compelled to resort to the markets of this country to supply the goods. It would have been physically impossible for the buyer, after the seller's default, to have purchased goods in Italy and transported them to this country in time to meet its needs. Under such circumstances it has been held, and we think correctly, that the buyer may resort to the only market in which the goods are available to him, to wit, the market of the country of destination. This accords with the rule laid down in *Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49, and decisions made under the Uniform Sales Act. The place of delivery, rather than the place where the title passes, determines with reference to what market the damages are to be fixed. *Seaver v. Lindsay L. Co.* 196 App. Div. 397, 187 N. Y. Supp. 622; *Standard C. Co. v. California C. Co.* 197 App. Div. 187, 188 N. Y. Supp. 358; *Solomon v. Richardson,* 207 Mich. 415, 174 N. W. 125; *L. B. Foster Co. v. Koppel I. C. & E. Co.* 127 Misc. 51, 215 N. Y. Supp. 214.

It is further argued that the court erred in admitting in evidence certain memoranda made in the office of the defendant company relating to the price of prime clover seed on the Toledo market at or about the time when the shipment should have arrived in America if it had been forwarded in accordance with the custom of the trade. We shall not here discuss the difficult and vexed question of what are

memoranda made in the usual course of business, nor is it necessary to decide whether the memoranda in this case were properly admitted or not. Mr. Courteen, upon whose testimony the finding as to market value rests, testified as to his general knowledge of trade conditions, he being a dealer in clover seeds in all parts of the United States and familiar with the market and market conditions. He testified that the price of prime clover upon the Toledo exchange affected but did not fix the market price throughout the country, and he testified from his own knowledge as a market expert as to the price of seed of the kind and quality called for by the contract. This he was properly permitted to do. The memoranda referred to were made in the following manner: the chamber of commerce of Milwaukee received three or four times daily quotations from the Toledo market. These were telephoned to the office of the defendant company and entered upon slips prepared for that purpose which were filed and used in the defendant's business. The price named in these slips was not the price testified to by Mr. Courteen, but the Toledo price was one element or factor in determining the market price, and if such memoranda were not properly admitted they certainly were not prejudicial in this case. It added nothing to and took nothing from the testimony of the witness. 1 Wigmore, Evidence, § 717 and cases cited.

The principal objection to the testimony was that it related to the American rather than the Italian market. That contention has already been considered and disposed of.

*By the Court.*—Judgment affirmed.