IN the MATTER OF the COMPLAINT AGAINST
Judge Warren A. GRADY, Circuit Court Judge, Branch 2,
Ozaukee County, Wisconsin.

Supreme Court

*No. 82–2234–J. Argued January 4, 1984.—Decided May 30, 1984.*
(Also reported in 348 N.W.2d 559.)

For the Judicial Commission of the State of Wisconsin there were joint briefs by *Daniel W. Hildebrand* and

*Ross & Stevens, S.C.,* Madison, and *Natalie Smith,* attorney for the Judicial Commission, and oral argument by *Mr. Hildebrand.*

For the Honorable Warren A. Grady there were briefs by *William G. Bunk, Patrick R. Griffin* and *Bunk, Doherty & Griffin, S.C.,* West Bend, and oral argument by *William G. Bunk.*

PER CURIAM. *Judicial disciplinary proceeding; reprimand imposed.*

We review, pursuant to sec. 757.91, Stats., the findings of fact, conclusions of law and recommendation of the judicial conduct panel in the judicial disciplinary proceeding brought by the Judicial Commission against the Honorable Warren A. Grady, circuit judge for Ozaukee county, for his alleged persistent failure to perform official duties. The panel has recommended that Judge Grady be reprimanded for his persistent failure to be prompt in the performance of his official duties, his persistent failure to organize his court for the prompt disposition of judicial business, and his persistent failure to decide matters within the time period provided by sec. 757.025, and to file affidavits pursuant to that statute accurately reporting the status of undecided cases. The panel recognized that Judge Grady's delay in deciding cases is explained in part by the substantial number and increased variety of cases assigned to him following court reorganization in 1978. The panel also noted that during his twenty-one years as a county and circuit judge, Judge Grady has earned the reputation of being a hard-working, fair, and honorable judge and that he is now fully and timely performing his official duties established by sec. 757.025, Stats. While we do not accept all of the panel's conclusions, we agree that a reprimand of Judge Grady is appropriate discipline under the circumstances of this case.

The Judicial Commission's complaint, as amended, charged Judge Grady with the following judicial misconduct:[1]

(1) the aggravated and persistent failure to be prompt in deciding cases and to organize his court for the prompt and efficient disposition of judicial business, alleged to constitute a willful violation of a rule of the Code of Judicial Ethics, SCR 60.01(4) and 60.17, sec. 757.81(4)(a), Stats.;

(2) the willful or persistent failure to render decisions in cases submitted to him in final form for decision within 90 days, plus an additional 90-day period of extension, as provided in sec. 757.025, Stats., alleged to constitute a willful or persistent failure to perform official duties, sec. 757.81(4)(b);

(3) the willful and persistent filing of forms purporting to be affidavits required by sec. 757.025, Stats., claiming entitlement to salary despite his persistent failure to render decisions within the 90-day time period specified in that statute or certify in the record of ap-

---

[1] In the context of judicial discipline, sec. 757.81(4), Stats., defines "misconduct" to include:

"(a) Wilful violation of a rule of the code of judicial ethics.

"(b) Wilful or persistent failure to perform official duties."

The Code of Judicial Ethics, SCR chapter 60, prescribes standards of judicial conduct, including:

SCR 60.01(4) "A judge should be prompt in the performance of his or her duties, recognizing that the time of litigants, jurors, witnesses and attorneys is of value. A judge should organize his or her court and supervise the personnel under his or her charge so that the business of the court is dispatched with promptness and convenience."

That Code also establishes rules of judicial conduct, which are "of sufficient gravity to warrant sanctions if they are not obeyed," SCR 60.02, including:

"SCR 60.13 A judge shall not indulge in gross personal misconduct."

"SCR 60.17 An aggravated and persistent failure to comply with the standards of SCR 60.01 is a rule violation."

plicable cases his inability to do so, alleged to constitute gross personal misconduct, SCR 60.13, a willful violation of a rule of the Code of Judicial Ethics, sec. 757.81 (4) (a), and a willful or persistent failure to perform official duties, sec. 757.81 (4) (b).

The Judicial Commission subsequently withdrew by stipulation all allegations of gross personal misconduct and willful violation of the rules of the Code of Judicial Ethics. There remained the allegations that the judge's conduct constituted judicial misconduct as a willful or persistent failure to perform official duties.

This judicial disciplinary proceeding was before the panel, consisting of the Honorable John A. Decker, Honorable Charles P. Dykman and Honorable John P. Foley, Presiding Judge, on stipulated facts, supplemented by testimony presented at a hearing. We will accept the panel's findings of fact unless those findings are clearly erroneous. This is the same standard of review expressed in prior judicial disciplinary proceedings that a panel's findings of fact must be accepted unless they are against the great weight and clear preponderance of the evidence. *In Matter of Complaint Against Seraphim*, 97 Wis. 2d 485, 509 (1980), *Disciplinary Proceedings Against Guay*, 101 Wis. 2d 171, 175 (1981). *See, Robertson-Ryan v. Pohlhammer*, 112 Wis. 2d 583, 592fn. (1983).

The panel made the following findings of fact consistent with a stipulation of the parties:

Between 1979 and 1982 Judge Grady's decision in each of 21 cases over which he presided was made more than six months after the case had been submitted to him in final form for decision.[2]

---

[2] Of those 21 cases, six were decided less than a year after submission in final form, nine were decided between one and two years, three between two and three years, one between four and

As of June 3, 1982, there were at least 21 cases awaiting decision by Judge Grady, 14 of which had remained under submission for more than six months.

Judge Grady had no system for keeping track of cases so that those under submission for 90 days or more could be brought to his attention, although he initiated such a system after the Judicial Commission filed its complaint in this disciplinary proceeding.

Each month of 1979 through 1982 Judge Grady signed and filed a form reciting, in part, "Being duly sworn, upon oath . . . that, pursuant to section 757.025 of the statutes,[3] no matter or cause which was submitted in final form to me exceeds the time limit and that salary is due me for the above month." None of those recitations was truthful and accurate as to causes or matters submitted in final form to Judge Grady's court remaining undecided beyond the time period provided by sec. 757.025, Stats. Judge Grady knew that he had not completed decisions within 90 days after submission in final form and that he had not filed any certificates stating that he was unable to complete a decision in any given case within a 90-day period.

As of August 25, 1983 Judge Grady had no cases submitted in final form which remained undecided for 90 days or longer, and, since February, 1983, Judge Grady has been prompt in the performance of his duties and

---

five years, and, the most extreme examples, two small claims actions for unpaid wages were decided more than seven years after all testimony, evidence and argument had been submitted to the judge.

[3] Section 757.025, Stats., provides:

"(1) No judge of a court of record may receive or be allowed to draw any salary, unless he or she first executes an affidavit stating that no cause or matter which has been submitted in final form to his or her court remains undecided that has been submitted for decision for 90 days, exclusive of the time that he or she has been actually disabled by sickness or unless extended by the judge under sub. (2). The affidavit shall be presented to and filed with every official who certifies in whole or in part, the judge's salary.

"(2) If a judge is unable to complete a decision within the 90-day period specified in sub. (1), the judge shall so certify in the record and the period is thereupon extended for one additional period of not to exceed 90 days."

has organized his court and supervised the personnel under his charge so that the business of his court is dispatched with promptness and convenience.

Judge Grady and his court reporter, David Wahlberg, testified before the panel that at the time Judge Grady signed the affidavit forms each month, Wahlberg, as notary public, did not administer an oath to Judge Grady prior to his signing the affidavit forms, although Wahlberg notarized each of those forms. On the basis of that uncontroverted testimony, the panel found that Judge Grady was not under oath when he executed the forms and that, although purporting to be affidavits, the forms were not affidavits. The panel also found that since March, 1983, Judge Grady has executed and filed affidavits under oath in compliance with sec. 757.025, Stats.

The panel concluded, based on the parties' stipulation, that Judge Grady's failure to be prompt in deciding cases and to organize his court so that its business could be dispatched with promptness and convenience, when measured against the standards set forth in SCR 60.01 (4), Code of Judicial Ethics, constituted a persistent failure to perform official duties, defined as misconduct in sec. 757.81(4)(b), Stats. The panel also concluded that Judge Grady engaged in misconduct, as defined in that statute, by persistently failing to perform his official duties to decide matters within the time period established by sec. 757.025, and to file affidavits pursuant to that statute in order to draw his salary. This conclusion was based on the panel's determination that sec. 757.025, establishes an official duty of a judge to decide a matter within 90 days of its submission to the court in final form or, if unable to do so, to so certify on the record, thereby extending for one additional period of 90 days the time for deciding the matter, as well as an official duty of a judge to file an affidavit of compliance with that statute in order to draw any salary.

The parties entered into a second stipulation setting forth facts in mitigation of Judge Grady's conduct. On the basis of that stipulation, the panel made the following findings of fact:

Judge Grady's workload during the years 1979 through 1982 was heavy,[4]

As a result of court reorganization in 1978, Branch III in Ozaukee county was vacant from August 1, 1978, to July 31, 1979, during which time all cases docketed in that branch were assigned to Judge Grady,

Implementation of judicial rotation by Supreme Court Rule 70.23 (3) and court reorganization resulted in Judge Grady's presiding over cases of an increasingly varied nature and required him to complete cases which had been assigned to judges of the former 24th judicial circuit,

Judge Grady had no law clerks, interns, secretary, fulltime clerk or commissioners working in his court,

Judge Grady's output of judicial business for calendar years 1979 through 1982 was substantial.

During the relevant time period, Judge Grady exercised discretion in selecting the order in which he decided cases and assigned priority status to cases he felt required early decisions.

On the basis of these stipulated facts the panel found that during his 21 years as a judge of county and circuit courts, Judge Grady has earned the reputation of being a hard-working, fair and honorable judge, that he had a heavy caseload assignment during the years 1979 through 1982, and that he earned his salary during those

---

[4] For example, in calendar year 1982, 744 cases were filed in Judge Grady's court and 1065 cases were disposed of; these figures do not include uncontested traffic or forfeiture cases. During that same year Judge Grady presided over 38 jury trials, 96 trials to the court, 305 motion hearings, 150 default hearings, 98 arraignments or plea hearings in criminal matters; an additional 223 cases scheduled for trial were disposed of prior to trial. In addition, Judge Grady conducted or presided over an unknown number of pretrial conferences, status conferences, status hearings, sentencing hearings, and posttrial motion hearings.

years. The panel also concluded that Judge Grady is remorseful for his conduct, has publicly apologized for the inconvenience and hardship caused to litigants and the bar by his failure to perform his official duties, has executed and filed affidavits under oath in compliance with sec. 757.025, Stats., since March of 1983, and has given his complete cooperation to the panel in its conduct of the disciplinary proceedings.

As discipline, the panel recommends that Judge Grady be reprimanded for misconduct consisting of his persistent failure to perform official duties. In making that recommendation the panel acknowledges having balanced Judge Grady's misconduct against the mitigating factors. The panel stated, "Because respondent's misconduct is explained in part by factors beyond his control and because respondent has remedied behavior and practices within his control, the panel has concluded that a reprimand will sufficiently preserve the integrity of the judiciary and maintain public confidence in the judiciary."

The panel also notes that this is the first judicial disciplinary case charging that a judge's failure to comply with the provisions of sec. 757.025, Stats., constitutes misconduct, and it deems a reprimand sufficient to place other judges throughout the state on notice of the need for compliance with that statute. The panel suggests that in the event of future persistent noncompliance with the statute, more severe sanctions may be warranted.

From our review of the panel's findings of fact we find that they are not clearly erroneous, and we therefore accept them. The only factual findings the Judicial Commission objects to are the panel's findings that Judge Grady was not under oath when he executed the "affidavits" filed pursuant to sec. 757.025, Stats., and that therefore the forms he filed purportedly to be affi-

davits were not affidavits. It argues that, as a matter of law, the signing of a printed form· stating that the person signing is "duly sworn" and is making a statement "upon oath" renders the signing under oath. Judge Grady and his court reporter, the notary who signed the "affidavits," testified that on no occasion did the notary administer an oath to the judge prior to his signing the forms.

The Judicial Commission acknowledges that whether the affidavit forms were executed under oath is irrelevant to the panel's determination that Judge Grady persistently failed to perform an official duty to file accurate affidavits as to the status of cases pending in his court pursuant to sec. 757.025, Stats. Indeed, the panel concluded that Judge Grady failed to perform that duty, notwithstanding its finding that he was not under oath when he signed those forms. The Judicial Commission originally alleged that Judge Grady's filing of untruthful affidavit forms as to the status of his pending cases constituted "gross personal misconduct," proscribed by our Code of Judicial Ethics, SCR 60.13, and misconduct, defined in sec. 757.91 (4) (a), as a "wilful violation of a rule of the code of judicial ethics." However, for reasons not evident in the record, the Judicial Commission subsequently stipulated to the withdrawal of its allegations of "gross personal misconduct," as well as any allegation of a willful violation of the Code of Judicial Ethics. Consequently, the issue whether Judge Grady was, as a matter of law, under oath because he signed "affidavit" forms is not before us.

Having accepted the panel's findings of fact, including the conduct to which Judge Grady had stipulated as constituting a persistent failure to perform official duties, the only issue before us, other than our determination of appropriate discipline, is whether Judge Grady engaged in judicial misconduct by persistently failing to

comply with the two provisions of sec. 757.025, Stats. Judge Grady contends that the statute is unconstitutional. Because he has stipulated that he did not comply with either of the requirements of that statute, if the statute is constitutional, Judge Grady has persistently failed to perform the official duties prescribed therein; if it is unconstitutional, he has not.

The Judicial Commission argues that Judge Grady does not have standing to challenge the constitutionality of sec. 757.025, Stats., because he could have filed truthful and accurate affidavits and, when he did not receive his salary, brought an action to have the statute declared unconstitutional. In support of its contention, the Judicial Commission cites several criminal cases involving perjury, false statements made under oath, and conspiracy to circumvent a statute, in which it was held that the defendants were not entitled to challenge the underlying statutes pursuant to which they testified or made statements under oath or which they conspired to circumvent. Those cases are not apposite here for the reason that Judge Grady is not charged with making false statements under oath, but, rather, with persistently failing to perform an official judicial duty prescribed by sec. 757.025, to make accurate statements by affidavit.

A person charged with a violation of a statute has a fundamental due process right to challenge the constitutionality of that statute. *See, generally,* 16 Am. Jur. 2d, Constitutional Law, secs. 188 *et seq.* "A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action." *Mast v. Olsen,* 89 Wis. 2d 12, 16 (1979). Judge Grady is charged with judicial misconduct for having persistently failed to perform an official duty to comply with the provisions of

sec. 757.025, Stats., and he has admitted his failure to comply with those provisions. Because Judge Grady may merit discipline for misconduct if the statute constitutionally establishes judicial duties, he has a personal stake in the outcome of this proceeding. Therefore, he has standing. Even if we were to hold that Judge Grady does not having standing to attack the statute's constitutionality, we could raise and decide the constitutional issue *sua sponte,* as the statute is alleged to establish official judicial duties and therefore affects the judicial system of the state. *State v. Holmes,* 106 Wis. 2d 31, 40–41 (1981). Consequently, we address the constitutionality of the statute.

Judge Grady contends that sec. 757.025, Stats., is unconstitutional as a diminution of a judge's salary during his term of office. Because we hold the statute unconstitutional on another ground, we do not reach this issue.

We turn now to Judge Grady's argument that sec. 757.025, Stats., by purporting to establish time limits for judicial decision-making, is an unconstitutional exercise by the legislature of judicial power, either as an attempt to regulate the conduct of a judge in his official capacity or as a usurpation of the supreme court's administrative authority over all courts conferred upon it by the Wisconsin Constitution, Article VII, Sections 3(1) and 4(3), as amended April 1977.

On the issue of the statute's constitutionality as applied to Judge Grady, the panel concluded that the judge failed to meet his burden to establish beyond a reasonable doubt by extrinsic evidence that the statute placed an unconstitutional burden on him in the performance of his judicial duties. Apart from Judge Grady's testimony that the statutory time limit for deciding cases was burdensome in exceptional cases and that the statute dictated which cases should be decided first, there is no evidence that the statute establishes unreasonable time limits for judges to decide cases submitted to them or

substantially interferes with the exercise of their judicial duties.

Judge Grady also argues that sec. 757.025, Stats., constitutes an intrusion into the realm of the judiciary barred by the doctrine of separation of powers. We recently described that doctrine as follows.

"The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." *State v. Holmes,* 106 Wis. 2d 31, 42 (1981).

Judge Grady contends that sec. 757.025, by establishing any time limit for a judge to decide cases and by requiring a judge to verify by affidavit compliance with that requirement in order to receive salary, violates the doctrine of separation of powers.

We have held that the doctrine of separation of powers is not absolute. In *Holmes, supra,* we recognized that each of the three branches of government is not required to exercise its powers in total isolation from the other two branches.

"There are 'great borderlands of powers'—'twilight zone[s]'—'vast stretches of ambiguous territory'—in which it is difficult to determine where the functions of one branch end and those of another begin. The doctrine of separation of powers does not demand a strict, complete, absolute, scientific division of functions between the three branches of government. The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envisions a government of separated branches sharing certain powers." *Id.,* 43.

In these areas of "shared power," one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's exercise of its power.

"Although the legislature is not prohibited by the doctrine of separation of powers from enacting reasonable laws regulating substitution of judges to assure a fair trial and the appearance of a fair trial, the doctrine of separation of powers does impose significant limitations on the legislature's exercise of its power. Under the doctrine of separation of powers, the legislature is prohibited from unduly burdening or substantially interfering with the judicial branch." *Holmes, supra,* 68.

However, the separation of powers doctrine does not render *every* power conferred upon one branch of government a power which may be shared by another branch and as to which the undue burden or substantial interference standard is applicable. There are zones of authority constitutionally established for each branch of government upon which any other branch of government is prohibited from intruding. As to these areas of authority, the unreasonable burden or substantial interference test does not apply; *any* exercise of authority by another branch of government is unconstitutional. *Thoe v. Chicago M. & St. P. R. Co.,* 181 Wis. 456, 465 (1923).

The panel concluded that sec. 757.025, Stats., does not, on its face, unreasonably burden or substantially interfere with the judicial branch of government nor unreasonably interfere with the Supreme Court's superintending and administrative authority over all courts, but it did not address the issue whether the statute represents an intrusion by the legislature into an area of exclusive judicial authority. This, then, is the issue we must decide.

Section 757.025, Stats., was originally enacted by ch. 405, Laws of 1959, to require judges of a court of record, as a condition of receiving their salary, to file an affidavit stating that no cause or matter submitted to them in final form for decision remained undecided for

one year or more. That period was subsequently reduced to 90 days, and a 90-day extension was provided, ch. 253, Laws of 1969. We note that the legislature enacted a statute in 1909 substantially similar to present sec. 757.025.[5] However, unlike the present statute, the 1909 provision concerned only *county* judges, who were county employees, and the courts affected were not constitutional courts but courts created by the legislature pursuant to express constitutional authority.[6]

By virtue of the 1978 court reorganization, county courts were abolished, ch. 449, Laws of 1977, and were replaced by circuit courts. Consequently, the courts now composing the unified court system in which the constitution reposes the judicial power of the state are all constitutional, not legislatively created, courts. Whatever administrative regulations the legislature imposed on courts of its own creation may not be constitutional when applied to constitutional courts.

The Judicial Commission contends that the establishment of time limits within which judges are to decide cases does not intrude upon a power exclusively committed to the judiciary for the reason that the legisla-

---

[5] Sec. 694(7), 1909 Stats., provided: "No county judge shall receive or be allowed to draw any salary, unless he shall first take and subscribe an oath before an officer entitled to administer oaths, that no cause or matter in his court remains undecided that has been submitted for decision for the period of ninety days, exclusive of the time that he shall have been actually disabled by sickness, which affidavit shall be presented to and filed with the county clerk of such county."

It was subsequently renumbered sec. 59.80(2), Stats., ch. 695, Laws of 1919, and repealed in 1945, ch. 344, Laws of 1945.

[6] In 1909, Art. VII, sec. 2, Wis. Const., provided, in pertinent part: "The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and shall have power to establish inferior courts in the several counties, with limited civil and criminal jurisdiction. . . ."

ture, having a duty to promote the public interest, may enact laws to assure a fair trial and may effectuate the public policy of maintaining a fair judicial system and public confidence in that system. It argues that excessive delay in the deciding of cases directly impairs public confidence in the judicial system. This begs the question. The ultimate question to be decided is to which branch of government has the constitution reposed the power that is at issue here.

Judge Grady's arguments supporting his contention that the setting of time limits for judicial decision-making falls within an area of power conferred exclusively on the judicial branch of government are persuasive. For more than a century, this court has been called upon to resist attempts by other branches of government to exercise authority in an exclusively judicial area. These have included an attempt to remove and replace a court employe, *In re Janitor,* 35 Wis. 410 (1874) ; an attempt to dictate the physical facilities in which a court was to exercise its judicial functions, *In re Court Room,* 148 Wis. 109 (1912) ; an attempt to legislate what constitutes the legal sufficiency of evidence, *Thoe v. Chicago M. & St. P. R. Co.,* 181 Wis. 456 (1923) ; an attempt to regulate trials in the conduct of court business, *Rules of Court Case,* 204 Wis. 501 (1931) ; bar admission and regulation of attorneys, *In re Cannon,* 206 Wis. 374 (1932), *Integration of Bar Cases,* 244 Wis. 8 (1943), 249 Wis. 523 (1946), 273 Wis. 281 (1956). In each of these cases we recognized areas of authority exclusive to the judicial branch and, therefore, free from intrusion by another branch of government.

Judge Grady cites several cases from foreign jurisdictions in which legislative attempts to exercise judicial power were held unconstitutional. In *State ex rel. Watson v. Merialdo,* 268 P.2d 922 (Nev. 1954), the Supreme Court of Nevada held unconstitutional a statute, similar to the one at issue here, requiring each district court

judge, before receiving a monthly salary, to file an affidavit with the state controller stating that no matters remain undecided for a period of more than 90 days. The court held that legislation attempting to require judicial action within a specified period of time is an unconstitutional interference with the judicial function.[7]

In *Coate v. Omholt*, 662 P.2d 591 (Mont. 1983), the statutes at issue required opinions to be reached or decisions written within 90 days of submission, unless the judge filed an affidavit with the chief justice to obtain an automatic 30-day extension. In addition, before the expiration of the 120th day of submission, the judge could file an affidavit to establish good cause for the delay, which would be determined by the Supreme Court. Violation of the statute carried with a forfeiture of one month's judicial salary of the judge. The court held:

". . . time limits within which judicial decisions must be reached, fall within what we recognized as the '. . . third realm of judicial activity, neither substantive nor adjective [procedural] law, a realm of "proceedings which are so vital to the effective functioning of the courts as to go beyond legislative power." ' [Citation omitted.]" *Id.*, 600.[8]

The Judicial Commission claims that these cases are based on a constitutionally mandated separation of powers doctrine and are, therefore, distinguishable from our holding in *State v. Holmes, supra,* that the legislature may enact legislation affecting the courts so long as

---

[7] Art. III, sec. 1 of the Nevada Constitution, provided:

"The powers of government . . . shall be divided into three separate departments—the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

[8] The Montana constitution contained a separation of powers provision similar to the Nevada constitutional provision cited in footnote 7, *supra.*

there is no "unreasonable" interference with judicial functions. This claim fails because it ignores the existence of some areas of judicial power which are exclusive to the judicial branch of government. Similarly, we are not convinced by the Judicial Commission's argument that most of the cases cited by Judge Grady can be distinguished on the ground that the statutes in question established unreasonable time periods or the imposition of penalties upon litigants because of judicial delay. We are not concerned with the reasonableness or substantiality of legislative interference; the sole question is whether the statute at issue is a legislative regulation of an area reserved exclusively to the judiciary.

The Judicial Commission cites *United States v. Brainer,* 691 F.2d 691 (4th Cir. 1982), upholding the provisions of the federal Speedy Trial Act, 18 USC secs. 3161 *et seq.,* in support of its contention that the Wisconsin doctrine of separation of powers is the equivalent of a doctrine of "shared powers" according to which one branch of government may exercise its authority in an area constitutionally established in another branch so long as its actions do not unreasonably burden or subtantially interfere with the exercise by that other branch of its authority within the area. It quotes the following passage from that case:

"In determining whether the Speedy Trial Act disrupts the constitutional balance between Congress and the courts, 'the proper inquiry focuses on the extent to which [the Act] prevents the [judiciary] from accomplishing its constitutionally assigned functions.' [Citation omitted.] A considerable degree of congressional intervention in judicial administration is constitutionally permissible if such intervention is 'justified by an overriding need to promote objectives within the constitutional authority of Congress.' [Citation omitted.]

". . .

"Once it is established that trial rights are a proper subject of legislation, the question becomes whether the

particular provisions of the Speedy Trial Act intrude upon the zone of judicial self-administration to such a degree as to 'prevent[ ] the [judiciary] from accomplishing its constitutionally assigned functions.' We do not think that the Act's impact upon the courts can fairly be described in such extreme terms. . . ." *Id.*, 697–98.

This serves to support the exclusivity argument more than the shared powers argument. It establishes the constitutional propriety of legislative intervention in judicial administration only when such intervention is justified "by an overriding need to promote objectives within the constitutional authority" of the legislature.

The court in *Brainer* acknowledged that not all governmental power is "shared power." It said:

"For present purposes, we assume without deciding that federal courts possess some measure of administrative independence such that congressional intervention would, at some extreme point, 'pass[] the limit which separates the legislative from the judicial power.' [Citation omitted.] It does not follow, however, that the Speedy Trial Act represents such an extreme. [Citation omitted.]" *Id.*, 697.

The court found that trial rights were a proper subject of legislation, thus requiring the application of an undue burden/substantial interference type of test.[9]

---

[9] The Speedy Trial Act requires, *inter alia*, that a defendant be tried within 70 days from the later of the date on which the indictment is made public or the date of the defendant's first appearance before a judicial officer of the court in which the charge is pending. The sanction for noncompliance with the act is mandatory dismissal of the action. In finding that the Speedy Trial Act did not so intrude upon judicial administration as to prevent the judiciary from accomplishing its constitutionally assigned functions, the court noted three exceptions to the time limits established: the Act excludes certain unavoidable delays from computation in the determination of the trial deadlines; it excludes from the statutory periods delay resulting from a continuance granted by the trial court upon a finding that "the ends

Unlike trial rights, the setting of time limits for judicial decision-making concerns the efficient and effective functioning of the court system and, therefore, is a matter of court administration. As such it comes within the administrative authority over all state courts which the Wisconsin Constitution vests in the supreme court, Art. VII, sec. 3(1), as amended in 1977. The legislature does not have the power to promulgate rules of court administration.

However, the statute requiring the withholding a judge's salary for failure to decide cases within a specified time goes beyond court administration. It constitutes an attempt by the legislature to coerce judges in their exercise of the essential case-deciding function of the judiciary. In so doing, the legislature violates the well-established policy that the judicial branch of government must be independent in the fulfillment of its constitutional responsibilities. That policy, a part of American jurisprudence since the founding of our republic and first acknowledged in the English Act of Settlement in 1701, requires that a truly independent judiciary must be free from control by the other branches of government.[10]

---

of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial"; it permits the judicial counsel of a circuit to suspend the time limits imposed by the Act when the district court cannot meet the time constraints by the efficient use of existing resources "due to the status of its court calendars." 18 U.S.C. secs. 3161(h), 3161(h)(8)(A), 3174. The court also noted that the Act's mandatory dismissal sanction for untimeliness is qualified: the court may dismiss the action without prejudice, subject to specified criteria. 18 U.S.C. sec. 3162(a)(2).

The Wisconsin statute before us establishes a time period not for the trial of an action but only for the judge's decision, and it provides no exception.

[10] See, United States v. Will, 449 U.S. 200, 217–19, 101 S. Ct. 471, 66 L. Ed 2d 392 (1980), in which the U.S. Supreme Court traces the origins of the Compensation Clause of the U.S. Consti-

The setting and enforcement of time periods for judges to decide cases lies within an area of authority exclusively reposed in the judicial branch of government. Section 757.025, Stats., is an intrusion by the legislature into the exclusively judicial area of judicial decision-making and, as such, is unconstitutional. Consequently, Judge Grady's failure to comply with that statute, *i.e.*, his failure to decide cases within the statutory time limits, his failure to certify his inability to do so in the record of applicable cases, and his failure to file accurate affidavits, does not constitute a persistent failure to perform official duties.

We do not question the legislature's wisdom in promoting the prompt disposition of judicial business, nor do the time periods for decision-making it has established seem unreasonable. However, a reasonable time period for judicial decision-making can be established only by the supreme court as a rule of judicial administration adopted pursuant to its administrative authority over all courts conferred by Art. VII, sec. 3(1) of the Wisconsin Constitution. Not only does the constitution grant administrative authority of the court system to the supreme court, but it also establishes a duty of the supreme court to exercise that administrative authority to promote the efficient and effective operation of the state's court system. A rule setting time limits for judicial decisions is desirable because it will accomplish that end.

Such a rule should require trial judges to report the status of cases pending beyond the established time period, but such reports should be for the purpose of alerting the judicial administrative offices, *e.g.*, the chief justice of the supreme court, as the administrative head

tution, Art. III, sec. 1, prohibiting the diminution of a judge's compensation during a term in office.

of the judicial system, the director of state courts and the chief judge of the appropriate judicial administrative district, of a need for additional judicial personnel or other steps to ensure the prompt disposition of judicial business in those courts. Therefore, in the exercise of our constitutional authority, Art. VII, sec. 3(1), Wis. Const., we hereby adopt, effective the date of this order,[11] the rule appended to this opinion establishing a time within which a judge shall be expected to decide a matter after submission in final form and requiring a judge to report to the judicial administrative authorities on a regular basis the status of cases pending beyond that time period.[12]

Having held sec. 757.025, Stats., unconstitutional, we reject the panel's conclusion that Judge Grady persistently failed to perform a judicial duty to decide cases within the time period set forth therein and to file affidavits pursuant to it. There remains the conduct to which Judge Grady had stipulated: his failure, in violation of the Code of Judicial Ethics, SCR 60.01(4), to be prompt in the performance of his duties and to organize his court and supervise court personnel so that the busi-

[11] There is insufficient time to send copies of this rule to the chief of the Legislative Reference Bureau and the Revisor of Statutes for review and suggestions as to drafting style and numbering prior to our adoption of it. That procedure, set forth in SCR 98.03, will be followed upon the filing of this opinion, and any necessary modifications of the rule will be made thereafter.

[12] We heretofore adopted a rule authorizing the director of state courts to require each judge to verify and certify vouchers for the judge, the reporter and assistant reporters, SCR 70.01(4), but this rule has not been used, nor was it intended to be used, to monitor the caseloads or the dispositional promptness of the state's trial judges. Rather, it is a successor to a statutory provision which required judges to notify the state's payroll authorities that salary was payable to judicial personnel, including the judges. See, sec. 20.66, 1949 Stats., sec. 20.260, 1955 Stats., sec. 256.54(8), 1961 Stats.

ness of the court could be dispatched with promptness and convenience. This we determine as a matter of law constitutes judicial misconduct.

Further, another aspect of Judge Grady's conduct merits our reproof: his filing of affidavit-type forms repeatedly misrepresenting the status of cases pending in his court during the four-year period 1979–82. Regardless of whether Judge Grady was under oath when he signed those forms and whether the statute under which those forms were filed is constitutional, Judge Grady regularly and knowingly misrepresented the status of his caseload. As noted above, the Judicial Commission initially alleged that his doing so constituted gross personal misconduct, but it later withdrew that allegation. Nevertheless, the conduct is undisputed. We conclude that Judge Grady's filing of affidavit forms knowing they misrepresented the status of his pending cases constitutes conduct prejudicial to the administration of justice and brings the judicial office into disrepute.

On the basis of the totality of Judge Grady's misconduct, and in light of the mitigating circumstances, we agree with the panel's recommendation that a reprimand is appropriate discipline. Although we make this determination in a case of first impression, we are aware of discipline imposed in similar cases in other jurisdictions.[13]

Upon our review of the findings of fact and conclusions of law of the judicial conduct panel in this judicial disciplinary proceeding, we order, as discipline for his persistent failure to perform official duties to promptly dispose of cases submitted to him for decision and to

[13] *In the Matter of Carstensen,* 316 N.W.2d 889 (Iowa 1982), *In re Weeks,* 658 P.2d 174 (Ariz. 1983), and *In re Jensen,* 593 P.2d 200 (Cal. 1978).

organize his court for the prompt disposition of judicial business, that the Honorable Warren A. Grady, circuit judge for Ozaukee county, be and hereby is reprimanded.

## *APPENDIX*

IT IS ORDERED that the following rule of judicial administration is adopted, effective the date this opinion is filed and until further order of the court.

SCR 70.36 Judges' Certification of Status of Pending Cases.

(1) (a) Every judge of a circuit court shall decide each matter submitted for decision within 90 days of the date on which the matter is submitted to the judge in final form, exclusive of the time the judge has been actually disabled by sickness. If a judge is unable to do so, within five days of the expiration of the 90-day period the judge shall so certify in the record of the matter and notify in writing the chief judge of the judicial administrative district in which the matter is pending, and the period is thereupon extended for one additional period of 90 days.

(b) The chief judge shall send a copy of a notification made under par. (a) to the office of the director of state courts. The director of state courts, pursuant to SCR 70.10, and the chief judge, pursuant to SCR 70.19(3)(a), shall assign judges as needed or take other steps to assist a judge who has made notification under par. (a) in the timely disposition of judicial business.

(c) In the exercise of its superintending and administrative authority over all courts and upon written request from a chief judge, the supreme court may extend the period specified in par. (a) for decision in specific matters as exigent circumstances may require.

(2) (a) Within the first ten days of each month every judge of a circuit court shall execute and file with the office of the director of state courts:

(i) an affidavit stating that there are no matters awaiting decision beyond the 90-day or, if extended by certification and notification, the 180-day period specified in sub. (1) (a), or

(ii) if there are matters so pending, an affidavit setting forth the name and docket number of each of those cases, the court in which it is pending, and the date on which it was submitted to the judge in final form.

(b) The office of the director of state courts shall send a copy of affidavits listing pending matters to the chief judge of the judicial administrative district(s) in which those matters are pending and shall notify the chief judge of a judicial administrative district of the failure of a judge within the district to file an affidavit pursuant to this subsection.

(3) Failure of a judge to comply with the requirements of sub. (1) (a) or sub. (2) (a) may result in one or more of the following remedial measures:

(a) Change of the judge's assignment, pursuant to SCR 70.19(3) (a),

(b) Referral of the matter by the director of state courts to the supreme court for the initiation of contempt proceedings,

(c) Referral of the matter by the director of state courts to the judicial commission for investigation of possible misconduct.

Comment: In addition to possibly constituting judicial misconduct under sec. 757.81(4), Stats., a judge's failure to comply with this rule may constitute contempt of the supreme court and result in the court's imposing a fine for noncompliance. *See, In re Hon. Charles E. Kading,* 74 Wis. 2d 405 (1976).

SHIRLEY S. ABRAHAMSON, J. (concurring). I agree that Judge Grady should be disciplined.

I also agree with the majority that inasmuch as it declares sec. 757.025, Stats. 1981–82, unconstitutional, it ought to adopt a rule encompassing the broad public policy decision reflected in sec. 757.025.[1] Although I would have preferred to submit the formulation of a rule to the Judicial Council, where public, open deliberations by representatives of the public, the bar, the legislature, and the trial and appellate bench may be held, I am satisfied that a public hearing in November after six months' experience with the rule may be a reasonable alternative under these circumstances. I therefore join the majority in promulgating the rule appended to the majority opinion.

I write separately because I disagree with the majority's conclusion that sec. 757.025, Stats. 1981–82, is unconstitutional as a violation of the doctrine of separation of powers.[2] I cannot join the majority because it has significantly altered the historical reading of the separation of powers doctrine in this state.

---

[1] The rule, like sec. 757.025, requires a judge to file an affidavit and keeps the same 90 and 180 day periods. There is no withholding of salary. It is not clear that the court, unlike the legislature, has the power to withhold pay. The chief judge and the director of state courts are to assist a judge who reports delay in deciding cases. Although the "sanctions," namely, the chief judge and the director of state courts are to assist the "overloaded judge," the judge may be held in contempt by this court, or the director of courts may file a complaint of judicial misconduct with the Judicial Commission, preexisted the promulgation of the rule, it is perhaps useful to spell out these matters clearly in this rule.

[2] The court has frequently said that a statute is presumed constitutional and that its invalidity must be established beyond a reasonable doubt. This canon is based on the separation of powers doctrine and a presumption of the good intentions and wisdom of executive and legislative officials who have also sworn to uphold the constitutions. I am not persuaded by the briefs, the majority opinion, or my own research that sec. 757.025 is unconstitutional.

While the majority concludes that a regulation like sec. 757.025, which is designed to promote the orderly and expeditious disposition of matters submitted to a judge, "lies within an area of authority exclusively reposed in the judicial branch of government" (emphasis added), *supra*, p 783, I conclude that the regulation lies within the zone of authority shared by the legislature and the judiciary.[3] Although I believe that this court is better qualified than the legislature to deal with problems of delay in circuit court decision-making, this court need not claim exclusive authority to take full advantage of its superior expertise and flexibility in working toward solutions to problems of delays.[3a]

[3] The majority interprets sec. 757.025 as setting "time periods for judges to decide cases." *Supra*, p. 783. For purposes of this concurring opinion I accept this characterization of sec. 757.025. I conclude that even as so interpreted sec. 757.025 is constitutional. Sec. 757.025 can be interpreted in other ways. A statute will be construed to preserve it from unconstitutionality. *In re City of Beloit*, 37 Wis. 2d 637, 643, 155 N.W.2d 633 (1968).

Sec. 757.025 may be viewed as having two parts: The first requires the circuit judge to advise the public, via the affidavit, of the status of undecided cases. The second requires withholding of pay. The affidavit requirement is certainly constitutional under the majority's reasoning. If the majority views the pay-withholding provision as coercive and unconstitutional, the majority should read sec. 757.025 as permitting this court to extend the 180-day period and allow for continued payment of compensation upon the petition of a circuit court judge showing good cause. Such an interpretation comports with this court's obligation "to uphold the constitutionality of a statute whenever possible" and the court's practice of rectifying "statutory deficiencies by court rule in order to save a statute." *State ex rel. Deisinger v. Treffert*, 85 Wis. 2d 257, 268, 270 N.W.2d 402 (1978).

[3a] Although I conclude that sec. 757.025 is constitutional, I further conclude that the court may adopt a rule that if good cause is shown the court may grant an extension beyond the statutory 180 day period. Such a rule would, in my view, be wise, would be within the court's power, and would be an example of the way the legislative and judicial branches of government act together to improve the administration of justice.

While this court should invoke the separation of powers doctrine when necessary to maintain the integrity and independence of the courts, it should hesitate to remove a matter from an area of authority shared by the legislature and the judiciary to an area exclusively reposed in the judicial branch of government. An expansive concept of exclusive judicial authority supplants the legislature's primary constitutional power to balance competing social policies and creates the danger of unchecked power in the judiciary.[4] Concurrent governmental powers afford the people greater protection: when the people perceive a need to which one branch has not been responsive, they can turn to the other branch for assistance. Concurrent governmental powers do not jeopardize the judiciary's independence. The court remains the final arbiter of constitutionality of a legislative enactment and, as such, retains power to check any legislative enactment which unduly hinders or hampers the administration of justice.

In determining whether sec. 757.025 violates the separation of powers doctrine, the proper inquiry focuses on the following three issues:

I. Since the Wisconsin legislature has plenary legislative power to act for the general welfare—except as its

[4] The doctrine of separation of powers is not an absolute rule but a working principle of government. It recognizes that each branch of government has exclusive functions which no other branch can perform, but that many governmental duties may be shared by one or more branches. The doctrine is applied to maintain balance between three branches of government, to preserve their respective independence and integrity, and to prevent the concentration of unchecked power in the hands of any one branch. See, *e.g.*, *In re E.B.*, 111 Wis. 2d 175, 181–85, 330 N.W.2d 584 (1983); *State v. Holmes*, 106 Wis. 2d 31, 42–45, 315 N.W.2d 703 (1982); *Layton School of Art & Design v. Wisconsin Employment Relations Commission*, 82 Wis. 2d 324, 347–48, 262 N.W.2d 218 (1978); *In re Integration of Bar Case*, 244 Wis. 8, 45–46, 11 N.W. 2d 604 (1943); *In re Cannon*, 206 Wis. 374, 240 N.W. 441 (1932); *Rules of Court Case*, 204 Wis. 501, 503–04, 236 N.W. 717 (1931).

power is expressly proscribed by the state or federal constitution or federal law—the first issue to be addressed is whether there is any such proscription on the enactment of sec. 757.025. We do not consider at this stage of the discussion the separation of powers doctrine.

Judge Grady asserts that sec. 757.025 violates article IV, section 26, of the Wisconsin Constitution, which prohibits diminution of judicial salaries. I conclude that sec. 757.025 does not constitute a diminution of salary. Even if it does, such diminution is permitted. The Wisconsin Constitution, unlike other constitutions, empowers the legislature to change judicial salaries during the term of office of the judge if the change in salary applies to all judges and the effective date of the law complies with the constitution.

II. Since the legislature is not expressly prohibited from adopting sec. 757.025, the second issue is whether sec. 757.025 falls within an area of authority within which the court may act.

Judicial power extends beyond the power to adjudicate a particular controversy and encompasses the power to regulate matters related to adjudication. It is undisputed that the constitutional grant of judicial power to this court includes the power to adopt rules regulating the time within which decisions are to be rendered. I therefore conclude that sec. 757.025 falls within an area of authority in which the court may act.

III. Since sec. 757.025 falls within an area of authority in which the legislature is not expressly prohibited from acting and in which the court may act, the third issue is whether sec. 757.025 falls within an area of exclusive judicial authority or within an area of authority shared by the legislature and court.

If a law falls within the court's exclusive authority, this court has held that such a law is valid if this court accepts it as an aid to the court's power; it is invalid if this court determines that the law thwarts the court's

power. *State ex rel. Reynolds v. Dinger*, 14 Wis. 2d 193, 109 N.W.2d 685 (1961).

If a law falls within an area of shared authority, this court has held that such a law is constitutional unless it unduly burdens or substantially interferes with the judicial branch. *State v. Holmes*, 106 Wis. 2d 31, 42, 68, 315 N.W.2d 703 (1981).

I conclude that sec. 757.025 falls within an area of shared authority. This court has recognized that both the legislature and the courts have a duty under article I, section 9, of the state constitution to ensure prompt justice. Since sec. 757.025 has not proven an undue burden on the judiciary in the 25 years since its enactment, I conclude it is constitutional.

Even if I were to agree with the majority that sec. 757.025 falls within an area of authority exclusively reposed in the judicial branch, I would accept sec. 757.025 as an aid to the court's power because it neither interferes with substantive decision-making nor sets unreasonable time limits.

I.

The legislature's exercise of legislative power is subject only to the limitations and restraints imposed by the state constitution, the federal constitution, or federal laws. *State ex rel. Frederick v. Zimmerman*, 254 Wis. 600, 615, 37 N.W.2d 472 (1949). The separation of powers doctrine does not necessarily prohibit the legislature from exercising its legislative policy making powers in areas that may in some way affect the judicial branch of government. *State v. Holmes, supra,* 106 Wis. 2d at 46; *John F. Jelke Co. v. Beck*, 208 Wis. 650, 660, 242 N.W. 576 (1932). The legislature adopted sec. 757.025 for the purpose of ensuring prompt resolution of litigation. There is no express federal or state constitutional prohibition or federal statutory prohibition on the legis-

lature enacting laws to ensure prompt resolution of litigation.

Clearly, the legislature has power to control judicial salaries. The constitution expressly provides that "judges shall receive such compensation as the legislature may authorize by law. . . ." Art. VII, sec. 10 (2), Wis. Const.

Judge Grady challenged the pay-withholding provisions of sec. 757.025 as violating article IV, section 26, which provides as follows:

"Section 26. . . . nor shall the compensation of any public officer be increased or diminished during his term of office except that when any increase or decrease provided by the legislature in the compensation of the justices of the supreme court or judges of any court of record shall become effective as to any such justice or judge, it shall be effective from such a date as to each of such justices or judges. . . ."

The majority does not decide whether sec. 757.025 violates this provision.

I am not persuaded that sec. 757.025 diminishes salary within the meaning of article IV, section 26. Sec. 757.025 does not reduce or eliminate a judge's salary upon the judge's failure to decide a case promptly; it merely delays payment.

I do not believe that the people intended the constitutional prohibition against diminution of salary to mean that a legislature was powerless to delay payment of salary if the judge was not performing up to minimum, reasonable, objective performance standards. Any diminution in the judge's salary based on the difference in value of present payment versus delayed payment is de minimis. I conclude the delay of payment of salary—which the judge can avoid—does not constitute a diminution of compensation within the meaning of the state constitution.

I agree with the Judicial Conduct Panel which concluded that sec. 757.025 "does not, on its face, diminish

the compensation of a judge of a court of record during the judge's term of office. The statute merely places conditions on a judge drawing his or her compensation, which [condition] has not proven to be unreasonable."

Finally, article IV, section 26, of the constitution does not bar the legislature from diminishing the compensation of a judge during the term of office. It allows the legislature to increase or diminish compensation of judges during their terms of office as long as the change in compensation applies to all judges of that court (circuit court, court of appeals, or supreme court) and the change becomes effective for any judge of that court who takes office after the change has been enacted. Thus even if sec. 757.025 is viewed as a diminution of salary, sec. 757.025 is constitutional because it applies to all circuit court judges and has been in effect as to circuit court judges since 1959.

## II.

I agree with the majority that this court's express, implied, incidental, and inherent judicial powers include the power to adopt rules regulating the time within which decisions are rendered. The state constitution vests the judicial power of this state in a unified court system, grants this court superintending and administrative authority over all courts, and provides that the chief justice exercise this administrative authority as the administrative head of the judicial system pursuant to procedures adopted by the supreme court. Wis. Const., art. VII, secs, 2, 3, 4(3). The constitution grants the court the power to adopt measures necessary for the due administration of justice in the state.

Furthermore, article I, section 9, of the Wisconsin Constitution, which guarantees to each person justice "promptly and without delay," imposes an obligation on this court "to realize as fully as possible the constitutional

guaranty of justice administered 'promptly and without delay.'" *Lumbermen's National Bank v. Corrigan,* 167 Wis. 82, 86, 166 N.W. 650 (1918).[5]

On the basis of article I, section 9, and the judiciary article of the constitution (article VII), I conclude that sec. 757.025 falls within an area of authority within which the court may act.

### III.

While the majority opinion discusses the existence of areas of shared power in which both the legislative and judicial branches may act, it does not examine whether each branch has power to regulate the time in which decisions are rendered. In a quantum leap and with no explanation, it moves from recognizing that some areas of authority are exclusively reposed in the judicial branch to asserting that sec. 757.025 falls within such an area.

Keeping in mind the need for comity and cooperation between the branches of government as well as the need to maintain the integrity and independence of the judiciary, I conclude that sec. 757.025 falls within the area of shared powers and not within the exclusive power of the court.

The overlap of judicial and legislative powers to ensure prompt resolution of litigation arises from the court's power to adopt measures necessary for the due administration of justice and the legislature's power to protect the public welfare by promoting the efficient and impartial administration of justice.

Sec. 757.025 does not fall within the court's exclusive power to decide a case. Sec. 757.025 does not usurp or interfere with the adjudicative function. It does not dictate the substantive outcome of the case. It does not apply the law to the facts of a case.

[5] See also *Strange v. Harwood,* 172 Wis. 24, 27–28, 177 N.W. 862 (1920); *D.H. v. State,* 76 Wis. 2d 286, 294, 251 N.W.2d 196 (1977).

I recognize that the institutional independence of the judiciary must include the ability not only to decide an individual case but also to decide it in an atmosphere free from coercion or interference by another branch of government. While the requirements that an affidavit be filed and that pay be withheld if decisions are delayed beyond a prescribed time limit encourage judges to decide cases promptly, no one claims that the imposition of reasonable time limits or the delay in compensation affects the circuit court's ability to reach a reasoned decision. *Supra,* p. 783. What is more, if the 90–180 day time limits in sec. 757.025 constitute coercion or interference with the circuit court's ability to independently and ably decide the merits of a case under the law, the rule adopted today would be outside the power of this court. *Cf.. Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, n. 3, 293 N.W.2d 155 (1980).

Our prior cases support my conclusion that sec. 757.025 falls within the area of shared powers and is not a violation of the separation of powers doctrine. Sec. 757.025 is not the only statute—or the first statute—establishing time limits for decision making. Sec. 757.025 has roots in the legal history of this state. As early as 1856 the Wisconsin legislature enacted statutes setting time limits within which the trial judge had to make certain decisions. See *Anderson v. Eggert,* 234 Wis. 348, 291 N.W. 365 (1940). This court has viewed these statutes favorably, as important provisions enacted by the legislature "for the purpose of requiring courts in the interest of sound public policy to administer justice 'promptly and without delay' in accordance with the constitutional mandate [of art. 1, sec. 9]." *Anderson v. Eggert, supra* 234 Wis. at 354.

In holding that sec. 757.025 falls within the judiciary's exclusive authority, the majority ignores article I, section 9, of the Wisconsin Constitution and this court's interpretation of that provision. Article I, section 9, provides that every person "ought to obtain justice

freely, and without being obliged to purchase it, completely and without denial, *promptly and without delay*, conformably to the laws." (Emphasis supplied.)

This court has expressly recognized that article I, section 9, of the state constitution imposes on every officer of the state "an imperative duty which should be performed without hesitation." *Strange v. Harwood*, 172 Wis. 24, 27–28, 177 N.W. 862 (1920). The declaration in article I, section 9, is not "mere rhetoric", *Strange v. Harwood, supra* 172 Wis. at 27. It expresses one of the "fundamental purposes of our system of jurisprudence" and relates "to the whole scope of the administration of law." *Ward v. Racine College*, 176 Wis. 168, 176, 185 N.W. 635 (1921). See also *Lumbermen's National Bank v. Corrigan*, 167 Wis. 82, 86, 166 N.W. 650 (1918).

The majority's only explanation for concluding that sec. 757.025 falls within the area of exclusively judicial authority is that "the setting of time limits for judicial decision-making concerns the efficient and effective functioning of the court system, and therefore is a matter of court administration. As such it comes within the administrative authority over all state courts which the Wisconsin Constitution vests in the Supreme Court. Art. VII, sec. 3(1) as amended in 1977. The legislature does not have the power to promulgate a rule of court administration." *Supra*, p. 783.

The majority appears to say that the legislature's lawmaking authority and the Supreme Court's administrative authority are mutually exclusive.[6] Yet the majority

[6] Secs. 3(1) and 4(3) of article VII add no new power to this court. The language relating to administrative power was added to clarify the existence of this court's administrative authority which it had claimed and exercised previously. See Martineau and Malmgren, *Wisconsin Appellate Practice*, 225–26 (1978). See also *In re Court Rules*, 204 Wis. 501, 236 N.W. 717 (1931); Rules Relating to the Creation of the Office of Chief Judge and the Creation of Administrative Districts for the Trial Courts, 71 Wis. 2d xiii (1975).

makes no attempt to delineate the boundary line between these two spheres of authority. The boundary line is not self-evident. While it is possible to view many issues concerning the efficient and effective functioning of the court system as administrative matters, labeling them administrative should not place them within the court's exclusive power. Policy issues appropriate to legislative determination are as likely to appear in what might be labeled "administrative" areas as in other areas.[7] Sec. 757.025 may also be labeled a procedural regulation, as this court has defined that term. See *Estate of Delmady*, 250 Wis. 389, 391, 27 N.W.2d 497 (1946). This court has frequently recognized that the legislative and judiciary share the power to regulate pleading, practice, and procedure issues that concern the efficient and effective administration of the court system. See *In re E.B.*, 111 Wis. 2d 175, 181, 330 N.W.2d 584 (1983); sec. 751.12, Stats. 1981–82.

For the reasons I have set forth, I conclude that sec. 757.025 falls within the area of shared powers in which both the legislature and judiciary may properly act.[8] The next question then is whether sec. 757.025 is nevertheless unconstitutional because it materially impairs or practically defeats the circuit court's power or the proper functioning of the judicial system.

As the majority opinion acknowledged, "aside from Judge Grady's testimony that the statutory limit for

---

[7] See ABA Committee on Standards of Judicial Administration, Standards Relating to Court Organization 75 (1974); Levin & Amsterdam, *Legislative Control over Judicial Rulemaking: A Problem in Constitutional Revision*, 107 U. Pa. L. Rev. 1, 36 (1958).

[8] For similar reasoning see *United States v. Brainer*, 691 F.2d 691 (4th Cir. 1982) (upholding federal Speedy Trial Act), and *State ex rel. Emerald People's Utility Dt. v. Joseph*, 292 Ore. 357, 640 P.2d 1011 (1982) (upholding legislative command to court of appeals to hear and determine case within three months from time of taking appeal).

deciding cases was burdensome in exceptional cases and that the statute dictated which cases should be decided first, there is no evidence that the statute establishes unreasonable time limits for judges to decide cases submitted to them or substantially interferes with the exercise of their judicial duties." (*Supra,* pp 774, 775.)

Sec. 757.025, Stats., was enacted first in 1909 as to county judges[9] and then in 1959 as to circuit judges.[10] Except for a change in the length of the initial time period,[11] it has remained substantially unchanged and uncontested for almost 25 years. While the length of time the statute has been on the books does not govern its constitutionality, the statute's longevity does suggest that it is not an onerous regulation and has not posed difficulties for the circuit judges in the framework of their day-to-day routine, such that it "materially impairs or practically defeats the circuit court's exercise of jurisdiction and power or the proper functioning of the judicial system so as to constitute a violation of the doctrine of separation of powers." *State v. Holmes,* 106 Wis. 2d 31, 69, 315 N.W.2d 703 (1982).

Even if the majority were correct in concluding that sec. 757.025 falls within the exclusive constitutional power of the judiciary, this court has recognized that "other branches or departments of government by statute, rule, or regulation may aid but not thwart the court in its exercise of the court's [exclusive] constitutional powers." *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 203, 109 N.W.2d 685 (1961). In *Dinger* this court recognized the validity of a statute imposing penalties for the unlicensed practice of law. Even though the court regarded the practice of law to be within this court's exclusive

---

[9] See ch. 19, Laws of 1909. This statute was repealed in 1945. See ch. 344, Laws of 1945.

[10] Sec. 256.025 was adopted in 1959. Ch. 405, sec. 1, Laws of 1959. (One year period).

[11] Ch. 253, secs. 2r, 3, Laws of 1969. (90–180 day period).

constitutional power, this court nevertheless concluded that the statute was valid as an aid to the court's exercise of its exclusive constitutional power. The court also refused to invalidate a regulation allowing real estate brokers to complete purchase contract forms since it considered this regulation of the practice of law a salutary one which the court "long tacitly permitted and which has worked reasonably well." *State ex rel. Reynolds v. Dinger, supra* 14 Wis. 2d at 206.

Thus, even if the majority view as to "exclusivity" is accepted, the majority must still determine whether sec. 757.025 aids or obstructs the court in the exercise of its exclusive power. Since it is clear that sec. 757.025 does not impose unreasonable time limits, does not interfere with substantive decision-making, has worked reasonably well, and has been tacitly permitted by this court for a long time, I would think the majority should "respect" the legislature's declaration upon this question and "adopt" the statute since it does "not embarrass the court or impair its constitutional functions." *In re Integration of Bar Case,* 244 Wis. 8, 11 N.W.2d 604 (1943). As we said in *Dinger, supra,* 14 Wis. 2d at 206: "[A]lthough we have the power to declare void [the Rule]. . . we do not use the power in this instance because we, ourselves, consider the rule a salutary one. . . ."

The majority's decision that sec. 757.025 is unconstitutional leads to several undesirable consequences: (1) this decision impedes the legislature's constitutional obligation to decide issues of public policy related to the administration of justice; (2) this decision relieves the legislature from its constitutional obligation to effectuate the state constitutional guarantee to each person that justice be obtained promptly and without delay; (3) this decision jeopardizes the validity of existing statutes that regulate pleading, practice, procedure and other matters which might be viewed as impinging on what this court

has now characterized as the court's exclusive administrative authority.

For the reasons set forth, I disagree with the majority's conclusion that sec. 757.025 is unconstitutional.

LOUIS J. CECI, J. (concurring). I agree with the majority that the reprimand of Judge Warren A. Grady is a warranted disciplinary measure for his persistent failure to perform official duties in order to promptly dispose of cases submitted to him for decision and for his failure to organize his court for prompt disposition of judicial business.

I also agree with the majority's decision to hold sec. 757.025, Stats., unconstitutional on the grounds that the statute's prescription of time limits for judicial decisions falls within an area of authority exclusively vested in the judicial branch of the government.

I write separately, however, because I believe that this is an appropriate case to draw attention to what I feel is a growing problem facing the judiciary of this state. As the majority notes in its opinion, the judicial conduct panel found that because of the court reorganization in 1978, Judge Grady's delay in deciding cases was partly due to the "substantial number and increased variety of cases assigned to him." *Supra,* at p. 765. The judge's work load during the years of 1979 through 1982 was characterized by the panel as "heavy." The panel also found that Judge Grady had no law clerks, interns, secretary, fulltime clerk, or commissioners working in his court. *Supra,* at p 770.

The majority accepted these findings of fact. The majority also concluded that the "efficient and effective functioning of the court system" falls within the administrative authority over the state courts that is vested in the supreme court. *Supra,* at p. 783.

Because the efficient and effective functioning of the court system is within the administrative authority of this court, I believe that we should be concerned with the heavy work load of the judiciary and the lack of any statewide system or plan which guarantees circuit court judges access to secretaries, fulltime clerks, etc., for purposes of organizing their case loads. We should also be concerned with the fact that in spite of the alarmingly high number of cases filed in courts like Judge Grady's, which was 744 for one year, there is likewise no statewide plan which provides circuit judges with the assistance of law clerks for research purposes.[1] Yet we expect our judges, without such assistance, to promptly dispose of all cases, whether simple or complex, submitted to their courts for decision.

The purpose of today's adoption of SCR 70.35, to alert judicial administrative offices of the need for the assignment of additional personnel or that other steps must be taken in order to ensure the prompt disposition of cases, is a step in the right direction. But it is only that—a single step. Although the problems I have pointed out do not excuse Judge Grady's conduct in the case at hand, I believe that in the future, we may witness instances where in spite of mammoth efforts by circuit judges to promptly dispose of their cases within the limits set down by this court, they are unable to do so without the assistance I have mentioned.

---

[1] We take judicial notice of the fact that federal district court judges are provided with the services of two fulltime clerks.